12257

CRAYTON v. FOWLER

(139 S. E., 161)

1. TRUSTS—TRUSTEE INVESTING TRUST FUND IN NOTE AND MORTGAGE IN VIOLATION OF DIRECTION CONTAINED IN TRUST DEED HELD PERSONALLY RESPONSIBLE FOR LOSS, NOTWITHSTANDING HIS GOOD FAITH. —Trustee whose investment of trust fund in note and mortgage was a departure from the express direction of the deed creating the trust *held* personally responsible for resulting loss, though such mismanagement was not willful or prompted by improper motives.

2. TRUSTS—TRUSTEE ,DEPARTING FROM DIRECTIONS IN TRUST INSTRUMENT IS LIABLE FOR RESULTING LOSS, IRRESPECTIVE OF GOOD FAITH.— It is a general rule that when a trustee departs from the directions contained in the trust instrument he is liable for any loss occasioned, irrespective of good faith in his best judgment.

3. TRUSTS—TRUSTEE'S MISMANAGEMENT IN IMPROPER INVESTMENT HELD NOT GROUND FOR REMOVAL, IN VIEW OF GOOD FAITH.—Trustee's improper investment of trust funds in note and mortgage in violation of directions contained in trust deed *held* not ground for removal, in view of his good faith, though bond conditioned on faithful discharge of duties was thereafter required.

Before SHIPP, J., Anderson, December, 1925. Affirmed.

Suit by Sallie C. Crayton against J. S. Fowler, individually and as trustee. Decree for plaintiff, and defendant appeals.

The following is the decree of Judge Shipp:

" * * * It appears from the testimony and is undisputed that on January 11, 1919, the defendant, J. S. Fowler, as trustee, invested the sum of $11,000.00 in a note secured by a real estate mortgage.

"On January 11, 1919, Anderson Real Estate & Investment Company executed and delivered to C. E. Pilgrim its note for the sum of $11,000.00, payable 3 years after date, to the order of C. E. Pilgrim, with interest from date at 7 per cent. per annum, payable semiannually on May 1st and November 1st of each year, unpaid interest to bear interest at the same rate, and providing for the usual 10 per cent. attorney's fee in case of collection by suit or attorney. This note was secured by mortgage on 236 1/3 acres of land, situate in Williamston Township, County and State aforesaid. On the same date the said C. E. Pilgrim transferred and assigned this note and mortgage, without recourse, to J. S. Fowler, as trustee, who thereupon paid over to the said C. E. Pilgrim the sum of $11,000.00 in consideration of the assignment of the said note and mortgage.

"On November 28, 1919, the Anderson Real Estate & Investment Company conveyed to one J. B. Spearman a tract of land containing 111 1/3 acres, which was a portion of the tract of 236 1/3 acres covered by said mortgage, in consideration of the sum of $7,210.00, and J. S. Fowler, as trustee, released said tract of 111 1/3 acres from the lien of the mortgage which had been assigned to him by C. E. Pilgrim, as aforesaid—thus leaving a tract of only 125 acres as security for the payment of the trust fund of $11,000.00 which he had invested in the purchase of said note and mortgage. Subsequently, it became necessary for J. S. Fowler, as trustee, to foreclose said real estate mortgage, and in the decree in this foreclosure proceeding he was given judgment for the sum of $13,657.65 against the said Anderson Real Estate & Investment Company and E. R. Horton, who had indorsed and guaranteed payment

of said note, and on sales day in May, 1925, said tract of land, which, after the release of the Spearman tract, contained only 125 acres, was sold by the Probate Judge as special referee, and was bid off by J. F. Mauldin for the sum of $7,000.00—Mr. Mauldin paying $3,000.00 cash and giving to the said J. S. Fowler, trustee, his note for the sum of $4,000.00, payable December 1, 1925, with interest from date at the rate of 7 per cent. per annum, secured by a mortgage on said tract of land. Said judgment was credited with the sum of $6,397.20, the net proceeds of said sale, thus leaving a deficit of $7,260.45, and it appears that both the said Anderson Real Estate & Investment Company and E. R. Horton are now insolvent, and the judgment for said deficit uncollectible, thus causing a loss to the corpus of the trust estate of a sum in excess of $7,000.00. The defendant claims that he acted in good faith, and as he thought for the best interest of the beneficiaries of the trust estate when he invested the trust fund of $11,000.00 in the purchase of said note and mortgage, but the Court holds that when he made such investment he departed from the express direction of the deed creating the trust as to the mode of investment of the proceeds of the sale of the trust property conveyed to him by said trust deed; and although he is exonerated from any moral turpitude in the matter, it is clear under the law and the facts of the case that he must be held personally responsible for said loss. It is a general rule of law that when a trustee departs from the directions contained in the trust instrument he is liable for any loss occasioned, irrespective of good faith or his best judgment. 26 R. C. L., 1307, 1308; 44 L. R. A. (N. S.), 876. *Womach v. Austin,* 1 S. C., 421. *Sanders v. Rogers,* 1 S. C., 452. *Klugh v. Seminole Securities Co.,* 103 S. C., 120; 87 S. E., 644; 2 Perry on Trusts, § 847.

"The defendant, J. S. Fowler, claims that the plaintiff acquiesced in the investment of said trust fund in the note and mortgage referred to, but the evidence upon this point

does not satisfy the Court that plaintiff should be held to have acquiesced in such transaction. Neither is the testimony sufficient to sustain the contention of the defendant, J. S. Fowler, as trustee, that plaintiff should be barred from the relief sought herein on account of the release which she signed on April 2, 1920. It appears that at that time and prior thereto certain other matters were at issue between plaintiff, her son, and the defendant, J. S. Fowler. That at this time the defendant, J. S. Fowler, was represented by M. L. Bonham, Esq., and the plaintiff by J. P. Carey, Esq., and it would be unreasonable to suppose that if the parties at that time had in mind the settlement of this trust estate, their attorneys, both of whom were careful and able lawyers, would have permitted them to sign an agreement which made no reference whatsover to such trust estate.

"It is a matter in dispute as to whether or not the $500 received by the trustee from W. T. Daniels on the purchase price of the 48-acre tract which he contracted to sell of the trust property was included in the trust fund of $11,000.00 hereinabove mentioned, but since the testimony upon this point is not clear and satisfactory, the Court will give the trustee the benefit of the doubt and require him to account to the trust estate upon the basis that said sum of $500.00 formed a part of the fund of $11,000.00.

"It is, therefore, ordered, adjudged, and decreed that the said J. S. Fowler, as trustee, account to the trust estate under said deed of trust, for the sum of $11,000.00, with interest from May 1, 1921, at the rate of 7 per cent. per annum, less the four small payments, which the undisputed testimony shows were all the payments he has made since that date aggregating the sum of $262.48—the sum for which he is now accountable to said trust estate being the sum of $14,237.00—and it is ordered that the interest accrued and unpaid to date on said trust fund, to wit, the sum of $3,237.00, be accounted for and paid over to plaintiff forthwith by said trustee, and that the *corpus* of $11,00.-

00 be forthwith reinvested according to the terms of the trust.

"Since it does not appear that the mismanagement of the trust estate, from which the loss above mentioned resulted, was willful or prompted by any improper motives on the part of the trustee, the Court is reluctant at this time to order his removal as trustee; but since it appears that he has committed a breach of the trust, from which a loss resulted, though he may have acted in good faith, and since it further appears that there exists some antagonism between him and the plaintiff, it is ordered that the said J. S. Fowler, as trustee, be and he is hereby required to enter into a bond in the sum of $7,500.00 for the benefit of said trust estate, conditioned for the faithful discharge of his duties as trustee according to the terms of the trust created by said deed, such bond to be properly executed with good and sufficient surety to be approved by the clerk of this Court, and to be payable to and filed with the Clerk of this Court on or before February 1, 1926.

"It is further ordered that if the said J. S. Fowler, as trustee, fails to execute and file the bond above required within the time mentioned, or fails to do or perform any of the other matters and things required of him in this decree, then and in such event the said J. S. Fowler is hereby removed as trustee of said trust estate, and the plaintiff or any of the other beneficiaries of said trust are hereby granted permission to apply to the Court, at the foot of this decree, for an order appointing some competent and suitable person as trustee of said trust estate, or for such other and further relief herein as may be just and equitable in the premises."

*Messrs. Sullivan & Sullivan* and *Watkins & Prince,* for appellant, cite: *Cestui que trustent may be barred by waiver or estoppel:* 21 C. J., 1133; 117 U. S., 96; 29 L. Ed., 811; 39 Cyc., 413, 414, 521; 26 R. C. L., 187; 185 N. Y., 420; 113 A. S. R., 921. *Release properly executed is a complete bar to recovery:* 34 Cyc., 1077.

*Messrs. A. H. Dagnall* and *Greene & Earle,* for respondent, cite: *Acquiesence of cestui que trustent in transactions of trustee:* 39 Cyc., 414; 48 N. E., 128; 61 A. S. R., ·132. *When trustee departs from directions contained in trust instrument he is liable for any loss sustained:* 1 S. C., 452; Id., 421; 103 S. C., 120; 2 Perry on Tr., Sec. 847; 26 R.C. L., 1307, 1308, 1324; 44 L. R. A. (N. S.), 876; 1 Hill Eq., 190; 45 L. R. A., 66. *Liability for interest:* 8 S. C., 362; 39 Cyc., 422; 1 Perry on Tr., Sec. 471; Id., 469. *Breach of trust subjects trustee to removal:* 39 Cyc., 264, 265. *Court may require execution of bond for faithful administration of trust:* 39 Cyc., 254; 1 Hill Eq., 69.

August 26, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The decree of Hon. S. W. G. Shipp, Circuit Judge, in this cause, which will be reported, is entirely satisfactory to this Court.

It is the judgment of this Court that all the exceptions be overruled, and that the decree of the lower Court be and the same is hereby affirmed.

MR. JUSTICE STABLER concurs.

MR. JUSTICE CARTER concurs in result.

MR. JUSTICE COTHRAN (dissenting) : I am not in favor of affirming the decree of his Honor Judge Shipp in this case for the reasons stated by him. On the contrary, I think that the decree should be reversed, and that the case should be remanded for the purpose of determining certain important issues which have not been passed upon, as indicated below.

The action was instituted for the purpose of having the defendant, J. S. Fowler, as trustee, account to the plaintiff for the income alleged to have accrued and become due to her and for the proceeds of the sales of certain portions of the trust property made by him.

It appears that prior to January 1, 1898, the defendant owned a tract of land in Rock Mills Township, of Anderson County, known as the "Frank White place," containing 290 acres' more or less. On or about that date he conveyed said tract of land to his wife, Hortense C. Fowler, absolutely in fee simple.

On January 1, 1898, the conveyance last referred to having evidently been made for that purpose, Hortense C. Fowler conveyed the tract of 290 acres to the defendant, J. S. Fowler, as trustee, in trust for the purposes mentioned in the deed. (The terms of the trust are set forth in the second paragraph of the complaint, and will be incorporated in the report of the case.) Briefly stated, the trustee was given the "entire control and management of said premises"; he was directed to pay annually to the plaintiff, Mrs. Sallie C. Crayton, a daughter of Mrs. Fowler by a former marriage, the net issues, rents, and profits of the premises, during her natural life with provision, therefor, after her death, and for the sale of the land at a certain time; "that the said J. S. Fowler, as trustee, may at any time that he deems advisable, and at the written request of the said Sallie C. Crayton, which written request must be indorsed upon his deed of conveyance, properly probated and recorded therewith, sell and convey the said trust property for the purpose of transferring the investment into other real estate, upon the same trusts herein set forth and declared."

The defendant, J. S. Fowler, accepted said trust and entered upon his duties as trustee under said deed; he took entire control and management of the premises, collected the issues, rents, and profits therefrom, and turned the same over to the plaintiff, Sallie C. Crayton, as the deed directed, until he sold and conveyed the greater portion of the place as will be explained.

On December —, 1910, the defendant, as trustee, sold and conveyed 93 acres of the trust land to one F. F. Martin for $4,220; on December 8, 1910, he sold and conveyed

134.9 acres to one C. D. Chamblee for $6,395; and on January 13, 1919, he contracted to sell 48 acres to one W. T. Daniel for $2,800, which agreement, however, has not been carried out, but upon which $500.00 cash was paid. These three sums ($4,220.00, $6,395.00, and $500.00), aggregating $11,115.00, were received by Fowler. Two hundred twenty-seven and nine-tenths acres of the 290 acres have accordingly passed out of his title and possession. The record contains an admission that these conveyances were made according to the conditions of the trust deed.

The $11,115.00, thus received by Fowler (assuming what is not clear, that it included the $500.00 received from Daniel) appears to have remained in his hands uninvested until January 11, 1919, he in the meantime accounting to the plaintiff for the interest, for she states in her testimony:

"I am not now insisting upon my claim for rents accruing from the trust estate, prior to April, 1920, rents or income."

On January 11, 1919, Fowler, as trustee, invested $11,000.00, the proceeds of the sale of the land as above detailed, in a note and mortgage which had been executed and delivered on that day by the Anderson Real Estate & Investment Company to one C. E. Pilgrim, the note being for $11,000.00, payable 3 years after date, with semiannual interest at 7 per cent. per annum and attorney's fees. This note was secured by a mortgage upon 236 1/3 acres of land in Williamston Township, Anderson County, and upon the payment by Fowler of $11,000.00 was transferred by Pilgrim to Fowler, as trustee. The land evidently belonged to Pilgrim and was sold by him to the Anderson Company, the note and mortgage being taken to secure the purchase price or a major portion of it.

On November 26, 1919, the Anderson R. E. & I. Company bargained 111 1/3 acres of the 236 1/3 acres covered by the mortgage which had been given to Pilgrim and assigned to Fowler, as trustee, to one J. B. Spearman, for $7,210.00, and induced Fowler to release the lien of the

Pilgrim mortgage from the 111 1/3 acres, the proceeds of the sale going to the Anderson Company, and leaving 125 acres as security for the $11,000.00.

The relations between the plaintiff and the defendant were not at all harmonious. She testifies that she had been trying to get the trust estate settled up for 8 or 10 years without success. In April, 1920, they were having a lawsuit of some kind, not explained in the record. On April 2, 1920, Fowler, Mrs. Crayton, and her only child, a son, J. S. Fowler Crayton, had a conference looking to a settlement of their differences. Fowler was being represented by his attorney, Hon. M. L. Bonham, now an honored Circuit Judge of this State, the Craytons were represented by Hon. J. P. Carey, as complete an attorney and as honorable a counselor as this State has produced, whose present affliction has caused great sorrow. A real estate transaction apparently disconnected from the trust estate matters was before them (at least, the connection has not been made to appear), and also the effort of Mrs. Crayton to remove the trust estate from Fowler's hands. Their negotiations covered both subjects, certainly *some* matters connected with the trust estate, for a simple real estate transaction could hardly have provoked the presence of the two distinguished attorneys, nor would certain provisions in the agreement which was executed have been inserted with reference to the real estate transaction. Mrs. Crayton was aware of the investment by Fowler in the Pilgrim mortgage, although she says that she knew nothing of the release of the 111 acres, and the son testified:

"At that time it was not anticipated that there would be any loss of any part of the $11,000.00."

Fowler testified that it was understood and agreed that the trust estate should remain in its then shape of the Pilgrim mortgage. , Judge Bonham testified:

"That it was to cover a release of everything that was in issue between him (Fowler) and Mrs. Crayton. * * *

Before Mr. Fowler· signed it, he asked if that included everything. Mr. Carey and I told him that it did. Mr. Carey. said that he would not consent to represent Mrs. Crayton if she tried to bring· up anything else after the settlement. * * * The trust was not an issue in the lawsuit then pending, but Mrs. Crayton wanted Mr. Fowler to surrender the trust estate, and that was one of the things discussed in the negotiations. * * * My understanding of the receipt was that Mrs. Crayton, nor her son, was not giving up all their rights to the trust estate, but my under-standing was that all questions at issue between Mrs. Crayton and J. S. Fowler, Jr. (Crayton) were settled when the agreement was signed."

. Mrs. Crayton testified that she then knew of the Pilgrim mortgage, that she had never authorized or ratified it, and that she objected to it, which clearly shows that that was an issue between them, and that she wanted the estate taken out of Fowler's hands because she was dissatisfied with his management.

In this atmosphere the agreement was executed. It recited the sale of certain real estate by Fowler to the Craytons and a lease of the livery stables, a part of that real estate, by Fowler, at a rental of $150.00 per month. It also contained this clause:

"And it is further covenanted and agreed by and between the said parties that the party of the first does hereby give to each of the parties of the second part a receipt in full of all claims of whatsoever nature he may have against them, and the parties of the second part hereby give to the party of the first part a receipt in full of any and all demands of whatsoever nature she and he may have against the party of the first part" (Fowler being the party of the first part, and the Craytons, of the second).

I think that the whole setting at the time of the execution of this agreement, the inflation of real estate values, the apparent confidence of every one that the unbounded era

of prosperity would continue indefinitely, the knowledge on
the part of Mrs. Crayton that there had been a breach of
trust in investing the trust funds in the Pilgrim mortgage,
the knowledge of her astute counsel of the effect of this
breach, demonstrates that the technical breach was acquiesced
in, and that all fear of loss on that account was composed;
as young Crayton testified:

"At that time it was not anticipated that there would be
any loss of any part of the $11,000.00."

In other words, I think that that settlement meant that
all parties were satisfied with the investment of the trust
funds in the Pilgrim mortgage, and that it was to stand as
it was at that time. The defendant, Fowler, offered testi-
mony tending to show that if there had been objection
raised he could have raised the cash and paid off the entire
indebtedness. I think, therefore, that the plaintiff and her
son have acquiesced in and waived the technical breach of
trust on the part of Fowler in investing the trust funds in
the Pilgrim mortgage instead of in other real estate; partic-
ularly, in view of the certain fact that if he had invested
them in other real estate, at the inflated values prevailing at
that time, the loss would have been as great. 21 C. J., 1133;
*Leather Mfrs. Nat. Bank v. Morgan,* 117 U. S., 96; 6 S.
Ct., 657; 29 L. Ed., 811; 39 Cyc., 413, 414, 521; 26 R.
C. L., 187; *Vohmann v. Michel,* 185 N. Y., 420; 78 N. E.,
156, 113 Am. St. Rep., 921.

It is not at all clear, however, that the beneficiaries were
then informed as to the release of the 111 acres from the
Pilgrim mortgage. Mrs. Crayton denies that at that time,
although she was advised of the investment in the Pilgrim
mortgage, she had been informed of the release. Her con-
tention naturally is in effect that, even if she should be held
to have ratified the original investment, she cannot be held
to such ratification further than the papers showed upon
their face, and that Fowler should be held as for a breach
of trust in having released the 111 acres.

I regard that as an important issue in the case. The investment was made on January 11, 1919, the release on November 28, 1919, the agreement on April 2, 1920. If at the time of the agreement the fact of the release was known to Mrs. Crayton, I think that the agreement should be held as ratifying the release as well as the original investment in the Pilgrim mortgage. This issue has not been determined.

If it should appear that Mrs. Crayton did not know of the release at the time of the settlement, it would not, of course, be fair to her to hold that she had ratified that of which she was ignorant.

If she cannot be held to have ratified the release, the question arises whether Fowler, in making that release, has committed a breach of trust. This issue has not been passed upon; the decree being based upon the assumption that the original investment in the Pilgrim mortgage was a deviation from the provisions of the trust deed and therefore a breach of trust, without reference to the matter of ratification or acquiescence above referred to.

If it should be decided that Fowler has committed a breach of trust in releasing the 111 acres, for what amount should he be held responsible therefor—the value of the 111 acres at the date of the release, the maturity of the mortgage, or the foreclosure sale?

I will not say whether, in my opinion, Fowler committed a breach of trust *ipso facto* by the release of the 111 acres. It may be so, or it may be that he is entitled to be judged by the circumstances surrounding him, the exercise of such judgment as would be required not simply of an ordinarily prudent man in his own affairs, but of one who is a trustee of the money of others. 39 Cyc., 391. This matter has not been passed upon.

If Fowler has committed a breach of trust in making the release, the release is necessarily void. What effect would this conclusion have upon the right of the beneficiaries to

have recourse under the Pilgrim mortgage against Spear-man, the purchaser from the Anderson Company? . Is Spear-man then a necessary party to this proceeding? If he should be held liable, what recourse has he against Fowler?

I do not see how exact justice can be measured out in this case without a determination of the issues indicated above, and I think, therefore, that the case should be re-manded as indicated in the opening paragraph of this opinion.

MR. CHIEF JUSTICE WATTS concurs.

NOTE: The portions of the trust deed which are pertinent to this case, as they appear in the second paragraph of the complaint, were as follows:

2. That on or about the first day of January, 1898, Hortense C. Fowler, now deceased, who was the mother of plaintiff, executed and delivered to the defendant, J. S. Fowler, who was her husband, her certain deed whereby, for the purpose of equalizing plaintiff with her other two children, she conveyed to the defendant, J. S. Fowler, his heirs and assigns, all that certain tract of land, situate in Rock Mills Township, County of Anderson, S. C., containing 290 acres, more or less, upon the following trusts and limitations, to wit: "To have entire control and management of said premises and to pay over to my daughter, Sallie C. Crayton, annually for and during her natural life the net issues, rents and profits of said land after first deducting the expenses of keeping said farm in repair and the annual taxes thereon. * * * Provided, further, that the said J. S. Fowler, as Trustee, may at any time that he deems advisable and at the written request of the said Sallie C. Crayton, which written request must be indorsed upon his deed of conveyance, properly probated and recorded therewith, sell and convey the said trust property for the purpose of transferring the investment into other real estate upon the same trusts herein set forth and declared, it shall not be at all obligatory upon the purchaser to look after the proper investment of such proceeds of sale as I have entire confidence in the combined judgment of my said husband and daughter, and perfect confidence in their integrity, but this authority to sell and re-invest shall not be exercised by or allowed to any other trustee other than the said J. S. Fowler except under proper orders from the Court of Common Pleas for Anderson County, S. C., in proceeding properly had for that purpose. * * *