HILL, J.:
**339 After a bench trial, the trial court ruled that Courtney Feeley Karp breached her fiduciary duty as Trustee of a trust created by her late mother by not timely distributing certain trust proceeds to Hugh Dereede (Hugh), Karp's stepfather, and to Tyre Dealer Network Consultants, Inc. (Tyre), Hugh's company. The trial court also awarded Hugh attorney's fees and held Karp personally liable for the verdict. Karp appeals these rulings, which we now affirm.
I.
Some eight months before her death, Deborah Dereede (Deborah), Karp's mother, executed a revocable trust. She named herself trustee and designated Karp as successor trustee. The only asset in the trust was a home located in Lake Wylie, South Carolina, which Deborah put on the market for sale a few months later. Several months after Deborah's death, Karp sold the house, netting $356,242.86.
This appeal turns on the following trust provision:
As soon as practicable following my death, my Trustee shall sell the house and lot located at 131 WHISPERING PINES DR., LAKE WYLIE, SC 29710. The sales proceeds shall be used first to pay off any mortgage against the property, and second to pay off that certain promissory note given by me to TYRE DEALER NETWORK CONSULTANTS, INC. Said promissory note, at the time of the execution of my Trust, is in the amount of $250,000.00, but in no event shall the amount due exceed one-half of the sales price of the property. After payoff of said mortgage and said note, my Trustee shall then distribute one-half of the remaining net sales proceeds to HUGH DEREEDE, outright and free of trust. The other one-half of the remaining net sales proceeds shall be distributed in accordance with the Articles that follow.
After the sale of the house closed, Hugh demanded immediate payment of his and Tyre's share of the proceeds. Karp, who was also the personal representative of Deborah's estate, believed she could not distribute the proceeds until she was certain of the net assets of the trust and the estate, and the time for creditor's claims had expired. Hugh would not be **340 delayed, however, and filed this action in the probate court seeking a declaratory judgment for immediate payment. After procedural sparring, Karp removed the case to circuit court. She continued to refuse Hugh's distribution request but now also claimed that, by suing her, Hugh and Tyre had triggered the trust's no-contest clause thereby forfeiting their right to the proceeds. In the event of such a forfeiture, the disputed monies would go to Karp and her siblings as remainder beneficiaries.
Ten months into the litigation, Karp appointed, with Hugh's consent, Catherine H. Kennedy as trust protector as contemplated by the trust. Kennedy filed a report concluding Karp was justified in waiting on any creditor's claims to clear before making any trust distributions and that the issues of whether Karp exercised good faith in invoking the no contest clause and whether probable *438 cause supported Hugh and Tyre's claims should be decided by the court.
Karp and Hugh testified at the bench trial. Karp called Kennedy as a witness, while Hugh presented S. Alan Medlin as his expert. The trial court ruled (1) Karp breached her fiduciary duty by not timely distributing the house sale proceeds to Tyre and Hugh; (2) Hugh had probable cause to bring this action, and therefore the no contest clause did not apply; (3) because Tyre was a creditor, the no contest clause was inapplicable to it; and (4) Tyre and Hugh were entitled to attorney's fees and costs from Karp.
II.
Because a breach of fiduciary duty claim can be legal or equitable, see Verenes v. Alvanos , 387 S.C. 11, 17, 690 S.E.2d 771, 773 (2010) (stating "an action alleging a breach of fiduciary duty is an action at law," but also that "a breach of fiduciary duty may sound in equity if the relief sought is equitable"), we look to the main purpose of the action to define our scope of review. Id . at 16, 690 S.E.2d at 773 ("Characterization of an action as equitable or legal depends on the ... main purpose in bringing the action." (internal quotation and citations omitted)). Here, the main purpose is to enforce an alleged unconditional duty to pay a beneficiary. Actions involving trusts are almost always equitable, but there is an exception that applies here: an action against a trustee under an alleged immediate and unconditional obligation to pay money **341 to a beneficiary is a legal action. 4 Scott & Ascher on Trusts § 24.2.1 at 1660 (5th ed. 2007); Restatement (Second) of Trusts § 198(1) (Am. Law Inst. 1959) ; see also S.C. Code Ann. § 62-7-1001 cmt. (Supp. 2018) (noting only traditional remedy at law for breach of trust was limited to suits to enforce obligations to pay money and deliver chattels, otherwise, remedies for breach of trust were "exclusively equitable"). We must affirm the verdict in a legal action tried by a judge alone if any evidence reasonably supports it. See Townes Assocs., Ltd. v. City of Greenville , 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976), abrogated on other grounds by In re Estate of Kay , 423 S.C. 476, 816 S.E.2d 542 (2018).
Although Verenes involved the right to a jury trial rather than standards of review, its holding rested on a conclusion that the main purpose of the damages action against the trustee there was equitable, as it sought the classic equitable remedies of restitution and disgorgement. 387 S.C. at 17, 690 S.E.2d at 773-74. Based on the complaint here, and the historical classification of suits seeking enforcement of a trustee's obligation to pay money as legal actions-as recognized in the comment to section 62-7-1001 quoted above-we hold that this is an action at law rather than equity. We acknowledge it is possible that after Verenes this action's main purpose could be classified as the equitable remedy of specific performance. If so, our scope of review would expand to de novo, and we may find the facts based on our view of the evidence. See S.C. Const. art. V, § 5 ; see also Doe v. Clark , 318 S.C. 274, 276, 457 S.E.2d 336, 337 (1995).
III.
A. Breach of Trust/Fiduciary Duty
The South Carolina Trust Code describes the duties of trustees and mandates that a trustee "shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries ...." S.C. Code Ann. § 62-7-801 (Supp. 2018). The Code also imposes a duty of loyalty on the Trustee. S.C. Code Ann. § 62-7-802(a) (Supp. 2018) ("A trustee shall administer the trust solely in the interests of the beneficiaries."). Where, as here, a trust has two or more beneficiaries, the duty of loyalty includes a duty to "act impartially in investing, managing, and distributing the **342 trust property, giving due regard to the beneficiaries' respective interests." S.C. Code Ann. § 62-7-803 (Supp. 2018). The Code also incorporates the common law of trusts and principles of equity to the extent they supplement its provisions. S.C. Code Ann. § 62-7-106 (Supp. 2018).
A breach of trust is simply a "violation by a trustee of a duty the trustee owes to a beneficiary ...." S.C. Code Ann. § 62-7-1001(a) (Supp. 2018); see also *439 Restatement (Second) of Trusts § 201 (Am. Law Inst. 1959) ; Restatement (Third) of Trusts § 93 (Am. Law Inst. 2012) ; 4 Scott & Ascher on Trusts, § 24.5. The trust instrument has been likened to a map on which the settlor has set the course the trustee must faithfully follow, and from which the trustee departs at his peril. Rodgers v. Herron , 226 S.C. 317, 330, 85 S.E.2d 104, 110 (1954) ; Womack v. Austin , 1 S.C. 421, 438 (1870) ; see Restatement (Third) of Trusts § 73, cmt. (c) (Am. Law Inst. 2007) ("A fundamental duty of the trustee is to carry out the directions of the testator or settlor as expressed in the terms of the trust." (quoting Bogert, The Law of Trusts and Trustees § 541 (rev. 2d ed. 1993) )).
As the trial court noted, Karp's duty to execute Deborah's intent expressed in Article 6, Section 4 in distributing the proceeds was absolute, not discretionary. See Cartee v. Lesley , 290 S.C. 333, 336, 350 S.E.2d 388, 389 (1986) ("The powers of a trustee are either mandatory or discretionary. A power is mandatory when it authorizes and commands the trustee to perform some positive act, and is discretionary when the trustee may refrain from exercising it.").
We agree with the trial court that the trust's directive that Karp sell the house "as soon as practicable" and distribute the proceeds to Tyre and Hugh did not permit Karp to wait until she could ascertain the liquidity of the estate and the extent of any creditors' claims. Such a delay is common and often required in the probate of a person's estate, but as Medlin testified, the unique trust provision here required expedited distribution to Tyre and Hugh. Medlin acknowledged Karp's position was understandable and not one of bad faith, for § 62-3-505(a)(3) makes revocable trust assets subject to probate claims if the probate estate is insufficient to pay its creditors. But, as Medlin emphasized, Karp risked no personal liability by following Deborah's intent to expedite distribution **343 of the house sale proceeds, as the Trust Code insulated her and allowed creditors to follow the money and recover against the distributee. See S.C. Code Ann. § 62-7-604(b) (Supp. 2018). Medlin also noted in his affidavit that a personal representative or trustee is only liable to non-beneficiaries if they are personally at fault. See S.C. Code Ann. § 62-3-808 (Supp. 2018) ; S.C. Code Ann. § 62-7-1010(b) (Supp. 2018); see also S.C. Code Ann. § 62-7-1002 (Supp. 2018) (stating trustee only liable to beneficiaries for breach of fiduciary duty). He also testified the trust provision at issue was an expression of Deborah's intent that the distributions to Tyre and Hugh be given priority and expedited.
We emphasize our holding is limited to the specific facts of this case and the specific language of this trust provision, which was part of an eighty page trust document that both Kennedy and Medlin deemed "a maze." We acknowledge Karp was placed in a difficult spot, and the "soon as practicable" language limited her options. Karp maintained she had not only the right but the duty to wait until the extent of the creditors' claims could be determined. Kennedy agreed. As we noted, that is the usual procedure for trustees and personal representatives. However, there is nothing in the record that tells us what the assets and liabilities (including any potential estate tax liabilities) of either the Trust or Deborah's probate estate were. Without this information, Karp's position falters. Medlin testified it appeared the Trust had sufficient assets to safely distribute the house sale proceeds to Tyre and Hugh. Without contrary evidence, we are constrained by the "any evidence" standard of review to affirm the trial court's ruling. Our decision might be different were we viewing this issue through the de novo scope.
Karp also attempted to justify her delay by pointing to the possibility that Deborah could have, without Karp's knowledge, changed the terms of the trust by exercising her testamentary power of appointment by will or codicil. Even if we accept Karp's premise, the trust provides that if the trustee receives no notice of such a will or codicil within six months of Deborah's death, the trustee may distribute the trust "as though this power of appointment had not been exercised." Because Karp's delay far exceeded this six month window, her continued withholding of trust distributions in reliance on a potential revision of the trust was untenable.
**344 There is no evidence Karp acted in bad faith. While a Trustee is duty-bound to *440 act in good faith, good faith alone will not excuse a breach of trust. Once it is determined the trustee has failed to carry out the express terms of a trust, good faith "counts for nothing" in the breach of trust calculus. Rollins v. May , 473 F. Supp. 358, 365 (D.S.C. 1978) ; see 4 Scott & Ascher, § 24.5 ("A trustee who does the best it can, does, however, commit a breach of trust if the trustee's best is not good enough.").
The trial court's factual findings concerning Karp's breach of trust are supported by evidence, and we must therefore affirm them. See Townes Assocs. , 266 S.C. at 86, 221 S.E.2d at 775.
B. The No-Contest Provision of the Trust
We likewise affirm the trial court's finding that Hugh had probable cause to bring this action, rendering the no contest provision inoperable. See S.C. Code Ann. § 62-7-605 (Supp. 2018) ("A provision in a revocable trust purporting to penalize any interested person for contesting the validity of the trust or instituting other proceedings relating to the trust is unenforceable if probable cause exists for instituting proceedings."); see also Restatement (Third) of Property, Wills § 8.5 cmt. (c) (Am. Law Inst. 2003) ("Probable cause exists when, at the time of instituting the proceeding, there was evidence that would lead a reasonable person, properly informed and advised, to conclude that there was a substantial likelihood that the challenge would be successful."). This again is a factual matter we are bound to uphold if supported by any evidence. See Townes Assocs. , 266 S.C. at 86, 221 S.E.2d at 775. Professor Medlin's testimony, together with Deborah's intent as expressed in Article 6, Section 4 of the trust, supports the conclusion that Hugh acted reasonably in pursuing this action and it was likely he would prevail.
C. Tyre's Status: Beneficiary or Creditor?
Karp insists the trial court erred in treating Tyre as both a creditor and a beneficiary. She claims Tyre cannot be both (Medlin disagreed). In Karp's view, Tyre was a creditor, and therefore, she could not be liable to Tyre for breach of trust, a cause of action only available to beneficiaries. But this argument leads to a cul-de-sac, for even if Tyre was a creditor, it **345 would not affect Karp's liability for breach of trust to Hugh due to her lack of timely distribution to him, nor would it affect our holding that probable cause existed for this lawsuit. Assuming Tyre was a creditor, the no contest clause would not bind it. If Tyre was a beneficiary, the no contest clause would not apply because Tyre had the same probable cause as Hugh to challenge Karp's actions. A good argument could be made that Tyre was a beneficiary according to the Trust Code, which includes within the definition of beneficiary any person that "has a present or future beneficial interest in a trust ...." S.C. Code Ann. § 62-7-103(2)(A) (Supp. 2018). We explain all of this to demonstrate that Karp's argument may be disposed of by one of the great appellate truths: "whatever doesn't make any difference, doesn't matter." McCall v. Finley , 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987).
D. Karp's Personal Liability
Karp contends the trial court erred by making her liable in both her capacity as trustee, and personally. We conclude the trial court did not err.
A trustee is liable to the beneficiaries for a breach of trust. § 62-7-1002. This liability is personal, and the trustee must pay any damages from his own funds. See Restatement (Third) of Trusts § 100 cmt. a (Am. Law Inst. 2012) ("This Section addresses the measure of a trustee's personal liability for a breach of trust.").
Karp argues section 62-7-1010 protects her from personal liability unless she was personally at fault. This section, however, applies only to a trustee's liability to third parties and does not affect the trustee's personal liability to beneficiaries for breach of trust. See South Carolina Trust Code Article 7, Part 10, General Comment (" Sections 62-7-1010 through 62-7-1013 address trustee relations with persons other than beneficiaries."). Section 1010 does, though, highlight that Karp had little risk of personal liability to third party creditors of Deborah's probate *441 estate for promptly distributing the house sale proceeds as directed by the trust.
Although Karp acted in good faith, a trustee is nevertheless personally liable for breach of trust. See Crayton v. Fowler , 140 S.C. 517, 519, 139 S.E. 161, 161 (1927) ("[I]t is clear under the law and the facts of the case that he must be **346 held personally responsible for said loss. It is a general rule of law that when a trustee departs from the directions contained in the trust instrument he is liable for any loss occasioned, irrespective of good faith or his best judgment."); see also Hogg v. Walker , 622 A.2d 648, 653 (Del. 1993) ("A trustee's liability for a breach of trust is personal in character with all the consequences and incidents of personal liability."); In re Wills of Jacobs , 91 N.C.App. 138, 370 S.E.2d 860, 865 (1988) ("General common law principles hold that a trustee's breach of trust subjects him to personal liability."); 90A C.J.S. Trusts § 343.
E. Award of Attorney's Fees to Hugh
Karp next claims error in the award of attorney's fees. The Trust Code empowers trial courts to order attorney's fees in trust administration cases "as justice may require." S.C. Code Ann. § 62-7-1004 (Supp. 2018). We must affirm a trial court's fee award if any evidence supports it. Blumberg v. Nealco, Inc. , 310 S.C. 492, 493, 427 S.E.2d 659, 660 (1993). The trial court's comprehensive written attorney's fee award tracked the criteria of Baron Data Systems v. Loter , 297 S.C. 382, 384-85, 377 S.E.2d 296, 297 (1989), and its factual conclusions are well anchored by the record.
F. The Trust Protector and Subject Matter Jurisdiction
Karp contends the trial court lacked subject matter jurisdiction over this action because the trust gives exclusive jurisdiction to the trust protector to resolve any disputes.
"Subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong." Dove v. Gold Kist, Inc. , 314 S.C. 235, 237-38, 442 S.E.2d 598, 600 (1994) (internal quotations omitted). Whether a court has subject matter jurisdiction is a question of law we review de novo. See Capital City Ins. Co. v. BP Staff, Inc. , 382 S.C. 92, 99, 674 S.E.2d 524, 528 (Ct. App. 2009).
A trust protector is defined as "a person, committee of persons or entity who is or who are designated as a trust protector whose appointment is provided for in the trust instrument." S.C. Code Ann. § 62-7-103(27) (Supp. 2018). "The powers and discretions of a trust protector are as provided in **347 the governing instrument and may be exercised or not exercised, in the best interests of the trust, in the sole and absolute discretion of the trust protector and are binding on all other persons." S.C. Code Ann. § 62-7-818 (Supp. 2018). There is no case law interpreting the role of trust protectors in South Carolina or their effect, if any, on subject matter jurisdiction.
The parties designated Kennedy as Trust Protector. Article 3, Section 8(h) of the Trust states, "The Trust Protector may unilaterally resolve any dispute, claim or conflict" between beneficiaries and the Trustee. (emphasis added). In the event the trust protector elects to resolve such disputes, the "resolution shall be binding on all parties to [the] Trust and shall not be subject to review." Additionally, Section 8(h) declares:
No one may file or instigate a claim in a court of law without first submitting the claim to the Trust Protector for resolution .... The Trust Protector may submit the claim or dispute for mediation and/or binding arbitration. Subsequent to his or her review, the Trust Protector may give any claimant the authority to file and maintain an action in a court of law. ... Whenever a dispute, conflict, or claim involves an interpretation or construction of [the] Trust Agreement, the Trust Protector may file an action in a court of competent jurisdiction for the interpretation and construction of such Trust Agreement, or may instruct [the] Trustee to do so.
(emphasis added).
The plain language of the trust shows Deborah intended a trust protector could, under certain circumstances, have binding authority to resolve disputes like the one that triggered *442 this lawsuit. It is not necessary for us to detail these circumstances, because none of them exist here. By way of example, the trust protector provision arguably requires that any dispute be first presented to the trust protector before a lawsuit can be filed. Yet here the trust protector was not appointed until months after filing. Likewise, the trust protector provision states the trust protector may unilaterally resolve disputes, submit the dispute to mediation or arbitration, file a lawsuit to resolve the dispute, allow a claimant to file suit, or instruct the trustee to file suit. Here, Kennedy in her report **348 not only declined to resolve the dispute but encouraged Karp to seek judicial resolution.
Whatever the contours of the trust protector's authority, we hold that under the circumstances here they do not extend to stripping the trial court of subject matter jurisdiction. Probate Courts and Circuit Courts are specifically empowered to hear trust administration disputes. See S.C. Code Ann. § 62-7-201 (Supp. 2018).
IV.
We therefore affirm the ruling of the trial court. Finally, we dismiss Karp's appeal of the denial of her summary judgment motion. See, e.g. , Holloman v. McAllister , 289 S.C. 183, 186, 345 S.E.2d 728, 729 (1986) ("[T]he denial of a motion for summary judgment before trial is not reviewable after a trial of a case on its merits.").
Accordingly, the trial court's order is
AFFIRMED IN PART AND DISMISSED IN PART.
KONDUROS and MCDONALD, JJ., concur.