515 S.E.2d 544

**Roy A. PRUITT, R. Anthony Pruitt and Pamela Hatcher, Respondents,**

v.

**SOUTH CAROLINA MEDICAL MALPRACTICE LIABILITY JOINT UNDERWRITING ASSOCIATION, Appellant.**

No. 2957.

Court of Appeals of South Carolina.

Heard Feb. 10, 1999.

Decided March 15, 1999.

Rehearing Denied May 8, 1999.

William L. Pope, of Pope & Rodgers; and Andrew F. Lindemann, of Davidson, Morrison & Lindemann, both of Columbia, for appellant.

Louis D. Nettles, of Nettles, McBride & Hoffmeyer, of Florence for respondents.

HEARN, Judge:

Roy A. Pruitt, R. Anthony Pruitt, and Pamela Hatcher (Respondents) sought a declaratory judgment against the South Carolina Medical Malpractice Liability Joint Underwriting Association (JUA) that it remained obligated to the Respondents under the terms of a structured settlement agreement. The trial court found JUA was obligated, but credited JUA with amounts received by the Respondents when they opted-out of their annuity contracts. JUA appeals. We reverse.

On December 17, 1984, the Respondents entered into a release and structured settlement agreement as a result of a medical malpractice suit. The consideration consisted of an immediate cash payment and monthly payments. The release provided:

All of the [monthly] payments ... are to be guaranteed by the Executive Life Insurance Company throught [sic] its issuance of appropriate companion instruments in the form of a single premium annuity policy, the original of such policy to be owned and retained by Underwriters Adjustment Company....

The annuities were issued December 10, 1984. In early 1991, JUA was informed that Executive Life was placed in a conservatorship in California. In the fall of 1993, the California Insurance Commissioner announced the sale of Executive Life's assets to Aurora National Life Insurance Company. Pursuant to a court-approved resolution, Aurora sent each policy owner and payee a document offering the choice of

cashing in the annuity or continuing to receive his or her annuity payments from Aurora.

Aurora included an opt-out form for those who desired to surrender their policy and receive a lump sum. The Opt–Out form provided:

I elect NOT to participate in the Rehabilitation Plan of Executive Life Insurance Company. Therefore, I surrender my contract as of 2/27/94 and elect to receive the first cash payment which will be paid following 3/29/94.... *I understand that once I elect to opt out and this form is received by ELIC, my decision is irrevocable,* and that all benefits associated with my present contract other than future Opt–Out Payments ... will cease as of 2/27/94.

(emphasis in original).

On January 7, 1994, the Respondents' counsel wrote Samuel McEwen, JUA's Claims Manager, noting that notwithstanding JUA's election, the Respondents "continue to look to you for payment of the sums promised them.... They will, however, not accept any modification of your obligation to them and their actions should not be taken by you as any agreement to any modification of the obligation of the JUA to them."

On January 11, 1994, McEwen responded:

The JUA has no obligation to make an election for your clients; however we will endorse either of the options chosen by your clients in the election package.... [B]e advised that we have worked very hard to be sure that your clients have received their benefits as promised.

Each Respondent signed the Opt–Out form and sent it to JUA for its signature. JUA then forwarded the executed forms to Executive Life. Executive Life acknowledged receipt of the timely executed forms. Respondents, however, changed their minds and on February 25, 1994, attempted to revoke their election by letter, stating: "In all the confusion of the rehabilitation of [Executive Life], we feel that we made a wrong decision by electing to opt out of our annuities." This request to revoke their decisions was denied.

The Respondents received their payments pursuant to the opt-out documents. This suit was filed seeking a ruling that

JUA remained responsible for monthly payments.[1] The trial court ruled that JUA remained obligated to Respondents. After a calculation purporting to determine the present value of the annuities, the trial court credited JUA with the lump sums already received by the Respondents.

## STANDARD OF REVIEW

"A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue. An issue essentially one at law will not be transformed into one in equity simply because declaratory relief is sought." *Felts v. Richland County,* 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991) (citation omitted). To make this determination, the appellate court must look to the essential character of the cause of action. *See, e.g., Dean v. Kilgore,* 313 S.C. 257, 259, 437 S.E.2d 154, 155 (Ct.App.1993). It is clear this suit would not result in an enforceable money judgment, but would obligate JUA to perform under the 1984 settlement at some point in the future. Indeed, the Respondents state in their brief their cause of action is akin to an anticipatory breach of contract. The essence of this suit, however, is one for specific performance, an equitable remedy. Being an equity case, we review the record and make findings based on our own view of the preponderance of the evidence. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## DISCUSSION

JUA contends the trial court erred by finding it is obligated under the terms of the 1984 settlement to ensure that all monthly annuity payments are made, arguing waiver, estoppel, novation, and accord and satisfaction. We agree that Respondents waived their rights to continue to receive annuity payments by electing to opt out of the annuity plan.

---

1. In their complaint, Respondents acknowledged that "the lump sum payments made to [them] exceed the amounts due them so far under the Settlement Agreement, but the funds that they will receive from Executive Life will over the term of the agreement be substantially less that [sic] the value of the sums due them under the Settlement Agreement."

■■■ "Waiver is the voluntary and intentional relinquishment of a known right. It may be implied from circumstances indicating an intent to waive. Acts that are inconsistent with the continued assertion of a right may also give rise to a waiver." *Provident Life & Accident Ins. Co. v. Driver,* 317 S.C. 471, 478–9, 451 S.E.2d 924, 929 (Ct.App.1994) (citations omitted).

Although Aurora explained it would issue annuities to replace the Executive Life annuities, the Respondents chose to receive lump sum payments. Had the Respondents done nothing, they would have continued to receive the monthly payments as they had since the inception of the structured settlement. Instead, they elected to "cash out" and executed the opt-out documents. Within days of sending the opt-out forms to JUA, the Respondents acknowledged they had made "a wrong decision by electing to opt out of our annuities." Even though Respondents' counsel's letter to Sam McEwen purported to impose some continuing obligation on JUA, Respondents' actions in executing the opt-out forms clearly waived their right to monthly payments. Thus, the trial court erred by finding a continuing obligation by JUA to the Respondents.[2]

**REVERSED.**

HUFF and STILWELL, JJ., concur.

---

**2.** In light of our disposition on the waiver issue, we need not address JUA's remaining arguments.