540 S.E.2d 843

**Roy A. PRUITT, R. Anthony Pruitt, and
Pamela Hatcher, Petitioners,**

**v.**

**SOUTH CAROLINA MEDICAL MALPRACTICE LIABILITY
JOINT UNDERWRITING ASSOCIATION, Respondent.**

No. 25228.

Supreme Court of South Carolina.

Heard Nov. 1, 2000.

Decided Jan. 8, 2001.

Rehearing Denied Feb. 12, 2001.

---

Louis D. Nettles, of Nettles, McBride, Hoffmeyer, P.A., of Florence, for petitioners.

William L. Pope, of Pope & Rodgers, P.A.; and Andrew F. Lindemann, of Davidson, Morrison & Lindemann, P.A., all of Columbia, for respondent.

MOORE, Justice:

This case involves a dispute over a settlement agreement. The Court of Appeals reversed the trial court's finding that respondent (JUA) remained obligated under the agreement.[1] We granted a writ of certiorari and now reverse.

## FACTS

Petitioners (the Pruitts) are the family members of Linda Faye Pruitt who died as the result of allegedly negligent medical care. In December 1984, the Pruitts settled their medical malpractice case against defendants who were insured by JUA. The Pruitts agreed to release defendants and JUA in exchange for a lump sum payment of $293,000 plus monthly payments for thirty years or life, whichever was longer, in the following amounts: Roy Pruitt, the deceased's husband, $510 per month; and Anthony and Pamela Pruitt, the deceased's children, $500 per month each. The release includes a provision that JUA would purchase a single premium annuity policy from Executive Life Insurance Company (Executive) for the benefit of each of the Pruitts to guarantee these monthly payments.

In 1991, Executive was placed in conservatorship and its assets ultimately transferred to Aurora Life Insurance Company (Aurora). While in conservatorship, Executive sent JUA an election package to choose whether to continue the same monthly payments originally promised by Executive or to opt-out of the policy. The election package indicated that annuitants would receive 100% of the originally scheduled payments if electing to continue under a new contract with Aurora. The election decision would be irrevocable once received by Executive. In order to opt out, both the owner of the policy (JUA) and the annuitants (the Pruitts) had to consent. No action was required to continue the policy.

---

1. 335 S.C. 118, 515 S.E.2d 544 (Ct.App.1999).

JUA forwarded the election package to each of the Pruitts along with a letter advising: "You may remain in the plan under the current terms of the annuity contract or you may choose the 'opt out' option and receive a lump sum distribution in cash." In response, counsel for the Pruitts wrote JUA:

The letter you wrote [the Pruitts] seemed to imply that they were under some obligation to make an election regarding the Executive Life Plan. My review of the Executive Life/Aurora documents convinces me that the owner of these annuities .. [is the one] to make this election.... [The Pruitts] continue to look to you for payment of the sums promised them.

I further note that the election documents sent to [the Pruitts] do require their consent. Please be advised [the Pruitts] will not stand in the way of whatever election [you] wish to make. They will, however, not accept any modification of your obligation to them and their actions should not be taken by you as any agreement to any modification of the obligation of the JUA to them.

JUA responded only that it had no obligation to make an election for the Pruitts but would endorse whatever option they chose.

Shortly thereafter, JUA received completed opt-out forms from the Pruitts which it forwarded to Executive on January 18 and 27, 1994. Each opt-out form signed by the Pruitts includes the underscored language: *"I understand that once I elect to opt out and this form is received by [Executive], my decision is irrevocable."* On February 25, 1994, the Pruitts sought to revoke their election decision. Although JUA attempted to intervene on their behalf, the Pruitts' request to change their election was denied under Executive's court-ordered election plan.

In 1996, the Pruitts commenced this action against JUA asserting that JUA had disclaimed any further liability under the settlement agreement and seeking a declaration that JUA remained obligated to them. The Pruitts claimed that although the payouts they had received from the Executive opt-out amounted to more than was presently due them under the

settlement agreement, ultimately they would receive less than they would have had the monthly payments continued.[2]

JUA raised several defenses asserting the Pruitts had voluntarily agreed to the Executive opt-out. The trial court rejected JUA's arguments and held it remained obligated under the settlement agreement. On appeal, the Court of Appeals reversed finding the Pruitts had waived any right to the monthly payments by electing the Executive opt-out.

## ISSUE

Is there any evidence to support the trial court's finding that JUA remained obligated under the settlement agreement?

## DISCUSSION

■ The Pruitts claim the Court of Appeals misconstrued their cause of action as one for specific performance and erred in applying an equitable standard of review. The Pruitts contend their action was actually one at law and therefore the scope of review on appeal was limited to determining whether there was any evidence to support the trial court's decision.

We agree the Court of Appeals applied the wrong standard of review in this case. According to the Pruitts' complaint, they were asking for a determination of JUA's liability under the settlement agreement and not specific performance. An action to construe a contract is an action at law reviewable under an "any evidence" standard. *Felts v. Richland County*, 303 S.C. 354, 400 S.E.2d 781 (1991).

■ Further, we find there is evidence to support the trial court's finding that JUA remained obligated to the Pruitts under the settlement agreement. The settlement agreement recites as consideration for the Pruitts' release "the payments specified herein below." The agreement then itemizes the monthly amounts that "shall hereafter be paid" the Pruitts and states that these payments:

2. According to JUA's agent, annuitants opting out of the new Aurora policy received at most 84% of the policy's value.

are to be *guaranteed* by the Executive Life Insurance Company throught *(sic)* its issuance of appropriate companion instruments in the form of a single premium annuity policy, the original of such policy to be owned and retained by [JUA]. . . .

(emphasis added).

■ Read as a whole, the agreement provides that JUA is released from liability by payment of the specified monthly amounts and *not* upon simply purchasing the annuity policy. The provision that these payments were to be "guaranteed" by Executive is not an essential term of the agreement between the Pruitts and JUA but is a collateral undertaking with Executive. *See In re W.B. Easton Const. Co.,* 320 S.C. 90, 463 S.E.2d 317 (1995) (guaranty of payment is separate from original obligation to pay); *Carroll County Sav. Bank v. Strother,* 28 S.C. 504, 6 S.E. 313 (1888) (guaranty is collateral undertaking). Since the settlement agreement obligates JUA to pay these monthly amounts, the question then becomes whether the Pruitts' acceptance of the Executive opt-out waived their right to these payments under the settlement agreement. *See Janasik v. Fairway Oaks Villas Horizontal Prop. Regime,* 307 S.C. 339, 415 S.E.2d 384 (1992) (waiver is a voluntary and intentional abandonment or relinquishment of a known right); *Parker v. Parker,* 313 S.C. 482, 443 S.E.2d 388 (1994) (waiver may be expressed or implied from a party's conduct).

In finding a waiver, the Court of Appeals focused on the Pruitts' execution of the opt-out forms and summarily concluded:

Even though [the Pruitts'] counsel's letter to [JUA] purported to impose some continuing obligation on JUA, [the Pruitts'] actions in executing the opt-out forms clearly waived their right to monthly payments.

The Court of Appeals' analysis discounts the impact of counsel's letter which stated that the Pruitts were not obligated to make an election, they would continue to look to JUA for the monthly payments, and they would accept no modification of JUA's obligation. By this letter, the Pruitts expressly stated their intent *not* to waive any rights under the settlement agreement.

Further, the Pruitts' subsequent conduct in executing the opt-out forms was not so inconsistent with this assertion of their rights under the settlement agreement that waiver can be implied. *See Mende v. Conway Hosp., Inc.*, 304 S.C. 313, 404 S.E.2d 33 (1991) (waiver may result from action inconsistent with intent to insist on right); *Provident Life & Accident Ins. Co. v. Driver*, 317 S.C. 471, 451 S.E.2d 924 (Ct.App.1994). Before the Pruitts executed the opt-out forms, JUA never responded to counsel's disclaimer of any waiver. Further, JUA had previously treated the Pruitts as if it were obligated under the settlement agreement for the monthly payments *irrespective* of the status of the annuity policy when it supplemented Executive's reduced monthly annuity payments during Executive's conservatorship.[3] JUA's silence in the face of the Pruitts' disclaimer of any waiver and the parties' course of dealings support the conclusion the Pruitts had no reason to believe their execution of the opt-out forms would be a waiver of their rights under the settlement agreement. Under these circumstances, an intentional waiver cannot fairly be implied.

In conclusion, we find there is evidence to support the trial court's ruling the Pruitts did not waive their right to monthly payments under the settlement agreement and that JUA remained obligated to them for such payments. Accordingly, the decision of the Court of Appeals is reversed and the trial court's order is reinstated.[4]

REVERSED.

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

3. In fact, in subsequent correspondence between Executive and JUA, JUA indicated it considered itself legally obligated for the monthly payments to the Pruitts even after the opt-out.

4. In light of its conclusion on the waiver issue, the Court of Appeals found it unnecessary to address JUA's other grounds for reversal. We find these grounds without merit and affirm the trial court's rulings under Rule 220(b), SCACR. *See Brading v. County of Georgetown*, 327 S.C. 107, 490 S.E.2d 4 (1997) (elements of estoppel include false representation or concealment and prejudicial change in position in reliance thereon); *Adams v. B & D, Inc.*, 297 S.C. 416, 377 S.E.2d 315 (1989) (no novation unless both parties so intend); *Fanning v. Hicks,*

---

284 S.C. 456, 327 S.E.2d 342 (1985) (no accord without a meeting of the minds).