THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
South Carolina Department of Transportation, Respondent,
v.
McDonald's Corporation and Joel A. Pellicci and Linda
Pellicci, of whom McDonald's Corporation is Appellant.
 
 
 

Appeal From Horry County
 Edward B. Cottingham, Circuit Court Judge

Unpublished Opinion No. 2006-UP-237
Heard March 7, 2006  Filed May 9, 2006

AFFIRMED

 
 
 
Michael H. Quinn, of Columbia, for Appellant.
Barbara Munig Wessinger, of Columbia, Larry B. Hyman, Jr., of Conway, for Respondent.
 
 
 

PER CURIAM:  McDonalds Corporation (McDonalds) appeals an Horry County administrative judges order granting the South Carolina Department of Transportations (SCDOTs) motion in limine regarding evidence of damages arising from a prior condemnation action.  We affirm.
FACTS
McDonalds owns property (the Property) in Horry County fronting the southern side of Waccamaw Boulevard (Waccamaw), a road which previously accessed Highway 501 (501) directly.  McDonalds operates a restaurant on the Property, which rests a short distance from the Waccamaw Pottery Complex.
To improve traffic flow in the area, SCDOT decided to reconfigure the frontage road system along 501 near the Property.  Part of this reconfiguration included a change in access from Waccamaw to 501.  Instead of directly accessing 501, Waccamaw would connect to the new frontage road system and access 501 through a more circuitous route.  To complete the project, SCDOT also needed to acquire certain portions of the McDonalds property.  Toni P. Elliott, SCDOTs right of way agent, contacted John Amendola, an employee of McDonalds real estate department, to discuss the acquisition of portions of the Property, including 4,372 square feet fronting Bush Drive and a smaller strip of land abutting George Bishop Parkway.
Robert M. Christopher, a licensed real estate appraiser hired by SCDOT, appraised the value of the Property both before and after SCDOTs proposed acquisition.  The appraisal specifically noted the remainder of the Property would generally be the same . . . however, in the after situation, the access will change.  The appraisal indicated that the frontage road systems reconfiguration would probably result in a net benefit to McDonalds.  Christopher ultimately estimated the difference in the Propertys value after the 1999 acquisition to be $42,800.
Elliott contacted Amendola, explained the results of SCDOTs appraisals, and offered McDonalds $42,800 for the contemplated portion of the Property.  This offer is memorialized in a letter from Elliott dated February 3, 1998.  For approximately a year following the offer, the parties exchanged phone calls regarding the acquisition and the necessary relocation of the restaurants sign.  Unable to come to terms on a definitive agreement on the signs relocation, SCDOT initiated condemnation proceedings (the 1999 condemnation) on February 18, 1999.
The 1999 condemnation notice describes SCDOTs acquisition as fee simple title to 4,372 square feet of land [w]ithin 55 feet of the survey centerline of Frontage Road 6F [formerly Bush Drive], on the left . . . Also herein condemned is property within 45 feet of the survey centerline of George Bishop Parkway, on the right . . . . On March 8, 1999, Sandy Ligon, an employee of McDonalds, contacted Elliott about the condemnation notice and indicated she wanted to see if [they] could work the situation out without going to court.  As a result, the parties settled the 1999 condemnation action.
On March 23, 1999, McDonalds executed a deed to SCDOT reciting consideration of $42,800 for the proposed portion of the Property.  The deed also expressly called for the relocation of the restaurants sign.  Shortly thereafter, the parties executed a stipulation of dismissal with respect to the pending condemnation action, reciting that this case has been settled and, therefore, should be ended and stricken from the calendar . . . .
In 2000, SCDOT revised the plans for 501, deciding to elevate the highway and allow George Bishop Parkway to run underneath it.  As a result, SCDOT initiated a second condemnation proceeding against McDonalds (the 2000 condemnation) to obtain an additional 520 square feet of land and rights of access as may be needed for controlled access facilities.  On December 15, 2003, SCDOT filed a motion in limine requesting the court to exclude any reference to the change in access from Waccamaw to 501, arguing that this change was contemplated in the 1999 condemnation settlement and had no bearing on the current proceedings.  McDonalds responded with it own motion, asking the court to prevent SCDOT from presenting evidence that McDonalds had already received compensation for Waccamaws change in highway access.
After a hearing on the motions, a special administrative judge for the Horry County condemnation roster issued an order granting SCDOTs motion and denying McDonalds.  This appeal followed the denial of McDonalds motion to reconsider.
STANDARD OF REVIEW
The admission of evidence is within the sound discretion of the trial judge, and absent a clear abuse of discretion amounting to an error of law, the trial courts ruling will not be disturbed on appeal.  Vaught v. A.O. Hardee & Sons, Inc., 366 S.C. 475, 480, 623 S.E.2d 373, 375 (2005).
DISCUSSION
McDonalds contends the circuit court erred in concluding the change in access from Waccamaw to 501 was contemplated in the 1999 settlement and, thus, not relevant to the present condemnation action.  We disagree.
A motion in limine may be used in civil matters to gain a ruling excluding evidence which is irrelevant.  75 Am. Jur. 2d Trials § 102 (Supp. 2005).  The compensable measure of damages [in a condemnation proceeding is] the value of the land at the date of the taking plus any resulting injury to the remaining property offset by any benefits to the remaining land as a result of the project.  South Carolina State Highway Dept v. Carodale Assocs., 268 S.C. 556, 563, 235 S.E.2d 127, 130 (1977) (emphasis added).  McDonalds, therefore, must show that the damages from the change in access resulted from the present condemnation or were not contemplated in the 1999 settlement for evidence of such to be relevant to the present action.
It is uncontested that the alteration in access from Waccamaw to 501 did not result from the elevation of 501 over George Bishop Parkway.  McDonalds instead bases it argument on whether the access alterations were contemplated in the 1999 settlement.  Settlement agreements are viewed as contracts between the parties.  Harris-Jenkins v. Nissan Car Mart, Inc., 348 S.C. 171, 177, 557 S.E.2d 708, 711 (Ct. App. 2001).  An action to construe a contract is an action at law reviewable under an any evidence standard.  Pruitt v. South Carolina Med. Malpractice Liability Joint Underwriting Assn, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001).
SCDOT submitted the affidavit of J. Williams Gobbel, a licensed professional engineer, to support its position the construction plans attached to Christophers appraisal and sent to McDonalds clearly show Waccamaw would no longer directly access 501.  Furthermore, Christophers appraisal expressly indicated the change in access to the Property would not result in any pecuniary loss to McDonalds.  The affidavit of McDonalds professional engineer also notably admits that an experienced professional could discern from the plans that access from Waccamaw to 501 would be reconfigured by the initial project plans.  In addition, Elliotts records indicate she discussed the change in access with Amendola and he agreed the change in access could benefit McDonalds in the long run.  Elliotts affidavit stated she commenced discussion with McDonalds regarding the change in highway access as early as 1994, over four years prior to the 1999 settlement.[1]
Because there is evidence supporting the circuit courts conclusion that any damages arising from the alteration of Waccamaws access to 501 were contemplated in the 1999 settlement, we conclude the circuit court did not err in excluding evidence of these damages from the current proceedings as irrelevant.  We briefly address the following arguments also presented by McDonalds on appeal:
I. South Carolina Code Section 28-2-280(C)(3)
McDonalds argues section 28-2-280(C)(3) of the South Carolina Code (Supp. 2005) required SCDOT to include the change in access from Waccamaw to 501 in its 1999 condemnation notice.  We disagree.
The Condemnation Notice must . . . contain an appropriate legal description of the property to be taken or out of which an interest will be taken, and of the interest to be taken . . . . S.C. Code Ann. § 28-2-280(C)(3) (1991).  However, [a]t any time before or after commencement of an action, the parties may agree to and carry out, according to its terms, a compromise or settlement as to any matter, including all or any part of the compensation or other relief.  S.C. Code Ann. § 28-2-40 (1991).
In the 1999 settlement, the parties clearly took advantage of section 28-2-40 and entered into a settlement of the condemnation action.  Therefore, whether SCDOT complied with the notice requirements of section 28-2-280 (C)(3) is immaterial to the present action when the circuit court determines the change in highway access was contemplated by the prior settlement.
II. The Merger Doctrine
McDonalds asserts the deed should have been the only evidence relied upon by the circuit court to determine the terms of the 1999 settlement.  We disagree.
Generally, a deed made in full execution of a contract of sale of land merges the provisions of the contract therein, and . . . this rule extends to and includes all prior negotiations and agreements leading up to the execution of the deed.  Charleston & W.C. Ry. Co. v. Joyce, 231 S.C. 493, 504, 99 S.E.2d 187, 193 (1957) (internal citations omitted).  However, when a deed constitutes only part performance of a preceding contract, other distinct and unperformed provisions of the contract are not merged in the deed.  New Prospect Area Fire Dist. v. New Prospect Ruritan Club, 311 S.C. 402, 405, 429 S.E.2d 791, 792 (1993).
In the present case, the circuit court concluded the deed was not the parties final agreement with respect to the 1999 condemnation, but was only the partial performance of the preceding settlement agreement.  The evidence supports this finding.  The deed was executed in March 1999, but the stipulation of dismissal, clearly a part of the settlement agreement, was not included in the deeds terms.  We conclude, therefore, that the circuit court did not err in considering evidence outside the deed in determining the terms of the 1999 settlement.
III. The Effect of the Stipulation of Dismissal
McDonalds contends the effect of the stipulation of dismissal without prejudice was to void the 1999 condemnation notice and the resulting proceedings.  This issue is not germane to the present appeal.  After SCDOT filed a notice of condemnation, the parties entered into a settlement of the condemnation action.  The circuit court concluded this settlement contemplated the change in access from Waccamaw to 501.  The circuit court did not determine that the action was barred by concepts of res judicata, thus, the court did not misconstrue the dismissals legal consequence.
For the foregoing reasons, the circuit courts order is
 AFFIRMED.
BEATTY, SHORT, and WILLIAMS, JJ., concur.    

[1] McDonalds contends the circuit erred in addressing disputed facts in a motion in limine.  This issue is not properly preserved for our review.  See Long v. Norris & Assocs., Ltd., 342 S.C. 561, 578, 538 S.E.2d 5, 14 (Ct. App. 2000) (To properly preserve an issue for review, the litigant must make a contemporaneous objection.)