727 S.E.2d 620

**Forest BYRD, Appellant,**

**v.**

**Judy LIVINGSTON and TIAA Timberlands, II, LLC, Respondents.**

**No. 4973.**

Court of Appeals of South Carolina.

Heard April 24, 2012.

Decided May 16, 2012.

Rehearing Denied June 22, 2012.

238

B. Michael Brackett, of Columbia, for Appellant.

Blaney A. Coskrey, III, of Columbia, and Timothy D. Savidge, of Prosperity, for Respondents.

SHORT, J.

Forrest Byrd (Byrd) appeals from the trial court's order finding an agreement to settle a lawsuit relating to a land purchase was enforceable. Byrd argues the court erred in: (1) finding his son was not a party to the agreement; (2) concluding the subsequent conduct of the parties and attorneys established the parties had a meeting of the minds on all terms of the agreement; (3) not applying the law of joint contracts to the motion to enforce the agreement; (4) finding the agreement did not contain a condition precedent; and (5) ruling the agreement's provision that included his son was severable from the remainder of the agreement. We affirm.

## FACTS

Byrd entered into a contract to purchase property from Judy Livingston (Livingston) in May 2007, after being the winning bidder at a private auction. Byrd paid the full purchase price, and Livingston executed and delivered a general warranty deed for the property to Byrd in July 2007. Two days prior to executing the deed, Livingston executed and delivered a sixty-six-foot right-of-way easement over and across the subject property to TIAA Timberland, II, LLC (TIAA). This easement was recorded a little more than two hours after Byrd's deed was recorded. Byrd filed a complaint on September 10, 2008, against Livingston and TIAA, asserting five causes of action: (1) quiet title; (2) reformation; (3) breach of contract; (4) breach of contract accompanied by a fraudulent act; and (5) fraud or negligent misrepresentation. Byrd alleged Livingston concealed the right-of-way, and he accepted the deed based on her representations that Newberry County zoning ordinances required the right-of-way. TIAA filed an answer denying the allegations and counterclaimed, seeking "a declaratory judgment that it has an easement, express, implied by prior use, implied by necessity, and/or a prescriptive easement over [Byrd's] property." Livingston also filed an answer, denying all allegations. Following pretrial discovery, Byrd, Livingston, and TIAA attended a mediation conference on November 23, 2009, which resulted in all three parties signing an "Agreement in Principle" (Agreement).[1] The Agreement stated, "this agreement will be supplanted by a more formal and detailed written Settlement Agreement setting forth the agreement between the parties"; however, the Settlement Agreement was never signed.

On February 19, 2010, Livingston and TIAA (Respondents) filed a motion to enforce the Agreement. Byrd filed a motion in opposition. A hearing on the motion was held on June 30, 2010. Byrd asserted that because his son would not execute

---

1. During discovery, Byrd's son purchased a tract of land adjacent to Byrd's parcel. The purchase on July 31, 2009, was almost ten months after Byrd had filed his complaint against Livingston and TIAA. The dirt road, the subject of Byrd's lawsuit, crosses his son's property before it crosses Byrd's property; therefore, the easement also burdens his son's property. Byrd did not move to add his son as a party to the litigation when his son purchased his land.

the proposed Settlement Agreement, he himself was no longer bound by the Agreement and was unwilling to execute the Settlement Agreement. Respondents argued the November 23, 2009 Agreement was a valid, enforceable, stand-alone contract. The trial court issued its order on July 30, 2010, finding the Agreement enforceable against Byrd, Livingston, and TIAA, and ordering the parties to prepare and execute a formal settlement document embodying the terms of the Agreement. Byrd filed a Rule 59(e), SCRCP, motion for reconsideration, which the court denied. This appeal followed.

## STANDARD OF REVIEW

"In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Pee Dee Stores, Inc. v. Doyle,* 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct.App.2009); *see also Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n,* 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001) (finding enforcement of the terms of a settlement agreement is a matter of contract law); *Ecclesiastes Prod. Ministries v. Outparcel Assocs.,* 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct.App.2007) (stating a release agreement is a contract and contract principles of law should be used to determine what the parties intended); *Mattox v. Cassady,* 289 S.C. 57, 61, 344 S.E.2d 620, 622 (Ct.App.1986) (applying the general rules of contract construction to a settlement agreement). An action to construe a contract is an action at law. *Silver v. Aabstract Pools & Spas, Inc.,* 376 S.C. 585, 590, 658 S.E.2d 539, 541 (Ct.App.2008). In an action at law, on appeal of a case tried without a jury, the judge's findings will not be disturbed unless they are without evidentiary support. *Townes Assocs. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). However, this court is free to decide questions of law with no particular deference to the trial court. *Silver,* 376 S.C. at 590, 658 S.E.2d at 542.

## LAW/ANALYSIS

I. Byrd argues the trial court erred in finding his son was not a party to the Settlement Agreement. We disagree.

Byrd maintains that because the November 23, 2009 Agreement referenced his son's parcel as well as his own, his son

was intended to be a necessary party to a final agreement, and because his son did not sign the Settlement Agreement, he himself is not bound by the Agreement. The court found the Agreement was not enforceable as to Byrd's son, and the inclusion of the three-word reference to Byrd's son's property does not release Byrd himself from the Agreement. The Agreement's three-word reference to Byrd's son's property was included in one of its paragraphs:

25' easement (measured equally from center of the existing road) for purposes of ingress and egress, runs with land, subject to verification of feasibility by TIAA/Hancock— express grant superceding [sic] and canceling the 66' grant, son's parcel included.

The trial court noted that in Byrd's son's affidavit, he stated:

I am not, and never have been, a party to the legal action [between Byrd, Livingston, and TIAA]. . . . I did not attend, and was not represented at, the mediation conference . . . held on or about November 23, 2009. My father spoke to me about the mediation after the fact and explained to me the Agreement in Principal [sic] that was the product of the mediation. I was not involved in the negotiation of the terms of the Agreement in Principal [sic]; I did not authorize anyone to speak for me or to act on my behalf with respect to the Agreement in Principal [sic]; and I did not sign the Agreement in Principal [sic]. . . . I do not agree with the terms of the Agreement in Principal [sic], and I will not sign either the Agreement in Principal [sic] or a more formal and detailed written settlement agreement based on the terms of the Agreement in Principal [sic].

The court found the record contained no evidence warranting a finding that Byrd acted with actual or apparent authority by including his son in the Agreement. The court also found nothing in the record to contradict his son's sworn statement. The Agreement stated "[t]he undersigned parties . . . have reached an agreement in principle" and was signed by Byrd, Livingston, and TIAA's agent. It further stated, "[l]itigation dismissed, mutual releases among all parties." We find the evidence supports the court's determination that Byrd's son was not a party to the Agreement, the Agreement

was not binding as to Byrd's son, and the inclusion of the three-word reference to Byrd's son's property does not release Byrd himself from the Agreement.

II. Byrd next argues the trial court erred in concluding the subsequent conduct of the parties and attorneys established the parties had a meeting of the minds on all terms of the Agreement. We disagree.

"South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement." *Patricia Grand Hotel, LLC v. MacGuire Enters., Inc.,* 372 S.C. 634, 638, 643 S.E.2d 692, 694 (Ct.App.2007). "The 'meeting of minds' required to make a contract is not based on secret purpose or intention on the part of one of the parties, stored away in his mind and not brought to the attention of the other party, but must be based on purpose and intention which has been made known or which, from all the circumstances, should be known." *Player v. Chandler,* 299 S.C. 101, 105, 382 S.E.2d 891, 894 (1989). "The intention of the parties should be determined from the surrounding circumstances, as well as from the testimony of all the witnesses; and subsequent acts are relevant to show whether a contract was intended." *Wright v. Trask,* 329 S.C. 170, 178, 495 S.E.2d 222, 226 (Ct.App.1997).

Byrd argues the subsequent conduct of the parties to the Agreement demonstrated the intended and understood involvement of Byrd's son, and asserts as proof that his son was identified in the proposed Settlement Agreement as a party to the Agreement. However, the trial court found the subsequent actions of the attorneys show the parties' intent to settle the case: (1) the attorneys' emails "demonstrate[d] that Byrd's attorney believed the settlement to be binding but had apparently run into problems getting his own client to sign the documents," and Byrd's attorney asked to be relieved as his counsel; (2) "counsel's lack of compliance with the Scheduling Order in the case also strongly indicates that everyone believed the case to be settled"; (3) Byrd's attorney withdrew a pending motion; (4) the parties obtained and recorded a new survey as contemplated by the November 23, 2009 Agreement; and (5) Byrd paid his one-third share of the cost of the survey

as contemplated by the November 23, 2009 Agreement. Therefore, the court found it was "impossible to reconcile these actions by Byrd and his attorney with Byrd's current position that he did not intend to be bound." We find no error with the court's determination that the subsequent conduct of the parties and attorneys established the parties had a meeting of the minds and intended to be bound by the Agreement.

█ III. Byrd also argues the trial court erred finding the Agreement did not contain a condition precedent. We disagree.

█ "A condition precedent to a contract is 'any fact other than the lapse of time, which, unless excused, must exist or occur before a duty of immediate performance arises.' " *Brewer v. Stokes Kia, Isuzu, Subaru, Inc.*, 364 S.C. 444, 449, 613 S.E.2d 802, 805 (Ct.App.2005) (quoting *Worley v. Yarborough Ford, Inc.*, 317 S.C. 206, 210, 452 S.E.2d 622, 624 (Ct.App.1994)). "The question of whether a provision in a contract constitutes a condition precedent is a question of construction dependent on the intent of the parties to be gathered from the language they employ." *Id.* (internal quotation marks omitted).

Byrd claims the three words used in the Agreement referencing Byrd's son's property created a condition precedent that required Byrd's son to ratify the Agreement and sign the more formal and detailed Settlement Agreement to follow. Byrd argues the alleged condition precedent was not satisfied; therefore, his performance under the Agreement is excused. However, the trial court found there was no condition precedent to be found in the three words in the Agreement referencing his son's parcel. Further, the court found "Byrd's duties with respect to the Agreement are not conditional, either expressly or impliedly," and the inclusion of his son's property was "not so essential to the Agreement as to constitute a condition precedent or to excuse [Byrd's] non-performance under the Agreement." The court continued:

> [Byrd] should not be rewarded for asking that a term be included in the Agreement and then seek to avoid the Agreement once his son expresses a desire to not join the [settlement agreement]. In short, the Agreement cannot be read to excuse compliance due to the non-cooperation of a

person who is not a party to the Agreement.... The law does not and should not sanction a party's own request that a term be included, only to later argue that its very inclusion renders an agreement unenforceable.

We find no error in the trial court's ruling that the Agreement did not contain a condition precedent to his alleged obligation with respect to a final settlement agreement.

IV. As to the remaining issues, we adopt the trial court's order. *See Grosshuesch v. Cramer*, 367 S.C. 1, 6, 623 S.E.2d 833, 835 (2005) (adopting the reasoning set forth in the trial court's order as to some of the issues on appeal).

**AFFIRMED.**

FEW, C.J., and HUFF, J., concur.