**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Debra O'Conner, as Personal Representative of the Estate of Sandy Lynn Shook, Appellant,

v.

Aaron Collier, Respondent.

Appellate Case No. 2019-000856

———————

Appeal From Anderson County
R. Lawton McIntosh, Circuit Court Judge

———————

Unpublished Opinion No. 2023-UP-199
Heard May 11, 2021 – Filed May 24, 2023

———————

**AFFIRMED**

———————

Eric Marc Poulin and Roy T. Willey, IV, both of Poulin, Willey, Anastopoulo, LLC, of Charleston, for Appellant.

Michael T. Coulter, of Clarkson, Walsh & Coulter, P.A., of Greenville, and Michelle N. Endemann, of Clarkson, Walsh & Coulter, P.A., of Charleston, both for Respondent.

———————

**PER CURIAM:** Debra O'Connor, as personal representative of the estate of Sandy Lynn Shook (Decedent), argues the circuit court erred in granting Aaron Collier's

motion to enforce the settlement in this case. O'Connor contends no binding settlement agreement existed because Progressive Northern Insurance Company (Progressive) issued its second of two $25,000 settlement checks after her demand deadline had expired and hand delivered the checks to an address other than that listed in the offer of compromise. We affirm the order of the circuit court granting the motion to enforce the settlement.

**Facts and Procedural History**

On July 22, 2017, Decedent tragically died following a single-vehicle motorcycle accident. Collier, who was operating the motorcycle, was charged with felony driving under the influence accompanied by death. Collier had a vehicular insurance policy (Policy) through Progressive with a bodily injury coverage limit of $25,000 and property damage limit of $25,000.

On July 28, 2017, the Anastopoulo Law Firm (Law Firm) notified Progressive that it represented Decedent's estate and would be making a claim under the Policy. On April 28, 2018, Progressive offered to settle the claim for $25,000, Collier's per person bodily injury limit. In a May 25, 2018 email, Law Firm attorney Camden Hodge responded that Law Firm would send an offer of compromise upon completion of its case investigation.

On September 26, 2018, Hodge sent Progressive Senior Claims Specialist Jeff Vicary a nine-page, single-spaced settlement demand letter on behalf of Decedent's estate.[1] One section of this letter provided:

> Please be aware that our demand for policy limits is not negotiable and that <u>ALL</u> conditions of this offer of compromise must be met by the specified time limit. *If any condition is not met, or if any additional condition is imposed by Progressive, including but not limited to conditions of indemnification or the waiver of any*

---

[1] This is one of three cases before this court involving similar lengthy demand letters sent by this law firm. All three demand letters include swift turnaround times for compliance with numerous, at times internally inconsistent, demands. In these three cases, three veteran circuit court judges ruled in favor of the insurance companies; one on a motion to enforce the settlement and two on motions for summary judgment in declaratory judgment actions.

> ***rights or claims not specified herein, this offer of
> compromise will be withdrawn, and we will obtain an
> excess judgment against your insured and enforce it
> against Mr. Collier's assets.***

Footnote two of eight, in smaller print, required:

> Settlement funds must be paid by Cashier's Checks, or
> Certified Bank Checks (not drafts) issued by your
> insurance company as follows: Debra O'Connor as PR
> for the Estate of Sandy Shook and the Anastopoulo Law
> Firm, LLC.  The checks must be **RECEIVED** in my
> office no later than 5:00 pm EDT on October 12,
> 2018 . . . .  These funds should be mailed to 32 Ann
> Street, Charleston, SC 29403.

Prior to the deadline provided in the demand letter, Vicary initiated the process of
retaining counsel to prepare the necessary covenant not to execute and obtain the
requested affidavits from Collier.[2]  In an affidavit accompanying Collier's motion
to enforce the settlement, Vicary explained that he issued two separate checks for
$25,000, numbered 210477106 and 210477107, for the bodily injury and property
damage limits of the Policy.  Vicary then emailed the paperwork and check
information to Progressive's North Charleston office and asked Richard
Ozegovich, who worked in the North Charleston office, to print and hand deliver
the checks and executed documents to Law Firm.

On October 11, 2018, Ozegovich hand delivered the requested executed documents
to Law Firm's North Charleston office, but inadvertently included only one of the
two $25,000 checks in the packet.  Ozegovich, who also provided an affidavit, left
the envelope with an attorney at the firm who signed for the check in Hodge's
absence.  Ozegovich's affidavit further explained he printed both $25,000 checks
but accidentally left one of the checks on his printer and thus failed to include it in
the packet.

---

[2] In addition to the Covenant not to Execute, other documents demanded in the
letter included Collier's "Sworn Statement of No Other Insurance," an "Affidavit of
No Other Insurance," and an affidavit addressing Collier's Progressive coverage.

On October 16, 2018, Hodge wrote Progressive another letter on O'Connor's behalf, returning Progressive's check and stating "your draft for $25,000 is clearly a rejection and counter offer. We are also troubled that your proposed CNTE- [sic] purports to release my client's claim for both BI and PD, even though your office only tendered payment for one of the claims." Upon learning of his mistake, Ozegovich hand delivered the second check on October 17, 2018, one day after Hodge wrote to notify him of the missing check and five days after the deadline set forth in the September 26 demand letter. Ozegovich left the check with Law Firm's receptionist after another attorney at the firm refused to sign for it.

The same day Progressive delivered the second $25,000 check, Law Firm filed a summons and complaint initiating a lawsuit on behalf of Decedent's estate. Collier then filed a motion to enforce the settlement, which Law Firm—purportedly on O'Connor's behalf—opposed. At the hearing on the motion, O'Connor argued that because Progressive delivered only one $25,000 check with the settlement documents to the wrong address, no enforceable settlement existed. The circuit court disagreed and granted Collier's motion to enforce the settlement, finding Progressive's response to the demand letter was "not a rejection and counteroffer of the arbitrary conditions placed in the plaintiff's "Offer to Compromise," and was instead an inadvertent mistake by an agent of the insurance carrier in regards to arbitrary deadlines set [forth] by the plaintiff's attorney."

Following another hearing, the circuit court denied O'Connor's motion to reconsider by Form 4 order.

**Standard of Review**

"In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009). "An action to construe a contract is an action at law." *Byrd v. Livingston*, 398 S.C. 237, 241, 727 S.E.2d 620, 622 (Ct. App. 2012). In an action at law, the circuit court's factual findings will not be disturbed unless they lack evidentiary support; however, "this court is free to decide questions of law with no particular deference to the trial court." *Id.*

**Law and Analysis**

O'Connor argues the circuit court erred in granting the motion to enforce the settlement because no enforceable contract existed after Progressive failed to

deliver both $25,000 checks within the demand letter's deadline and delivered both checks to the wrong address.

"The necessary elements of a contract are an offer, acceptance, and valuable consideration. A valid offer 'identifies the bargained for exchange and creates a power of acceptance in the offeree.'" *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491, 732 S.E.2d 205, 209 (Ct. App. 2012) (quoting *Sauner v. Pub. Serv. Auth. of S.C.*, 354 S.C. 397, 406, 581 S.E.2d 161, 166 (2003)). "South Carolina common law requires that, in order to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to *all* essential and material terms of the agreement." *Player v. Chandler*, 299 S.C. 101, 105, 382 S.E.2d 891, 893 (1989) (emphasis in original).

"To discover the intention of a contract, the court must first look to its language— if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 498, 649 S.E.2d 494, 501 (Ct. App. 2007). "The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof." *Id.* at 498, 649 S.E.2d at 502.

> It has long been the policy of the court to encourage settlement in lieu of litigation, and courts have usually enforced settlement agreements. There can be no doubt but that the trial court retains inherent jurisdiction and power to enforce agreements entered into in settlement of litigation before that court.

*Kinghorn as Tr. for the Mildred Ann Kinghorn Tr. dated 28 Apr. 2004 v. Sakakini*, 426 S.C. 147, 152, 825 S.E.2d 748, 750 (Ct. App. 2019) (quoting *Rock Smith Chevrolet, Inc. v. Smith*, 309 S.C. 91, 93, 419 S.E.2d 841, 842 (Ct. App. 1992)).

We find the circuit court properly granted Collier's motion to enforce the settlement because Progressive's failure to deliver the second $25,000 check within the deadline was a good-faith mistake, not a rejection or counteroffer. Vicary's conduct in attempting to comply with the demand letter's essential terms *before the settlement deadline* evidenced Progressive's assent to the essential and material terms of O'Connor's offer of compromise. Progressive prepared a covenant not to execute—listing $50,000 as the settlement amount—and the other documents Law Firm demanded prior to the October 12 deadline. On October 11, Ozegovich hand delivered one $25,000 check and the accompanying requested documents to the

law firm, but Law Firm did not notify Progressive of its mistake in failing to include the second $25,000 check with the settlement packet until October 16, 2018—four days after the deadline in Hodge's demand letter had passed.[3] We are troubled that Law Firm did not seek to remedy Progressive's mistake during the deadline for delivery set forth in the demand letter in light of the $50,000 figure clearly noted in the covenant not to execute.

We further find that given the sixteen-day period in which Law Firm demanded acceptance with the letter's numerous demands, the mailing address provided in the demand letter was not a material term of the offer of compromise. The demand letter stated, "The checks must be **RECEIVED** in my office no later than 5:00 pm EDT on October 12, 2018 . . . . These funds should be mailed to 32 Ann Street, Charleston, SC 29403." Rather than snail mailing the response packet to Law Firm's downtown mailing address, Progressive hand delivered the documents and funds to Law Firm's physical address in North Charleston. As the mailing address was not a material term of the demand letter, we agree with the circuit court that O'Connor's argument challenging the hand delivery of the settlement packet to Law Firm's physical address is without merit.[4]

**Conclusion**

Based on the foregoing, the circuit court's order granting the motion to enforce the settlement is

**AFFIRMED.**

**KONDUROS and MCDONALD, JJ., and LOCKEMY, A.J., concur.**

---

[3] The fact that the two $25,000 settlement checks were numbered sequentially, for the Policy's respective bodily injury and property damage limits, further supports the circuit court's finding that Progressive's failure to deliver both checks on October 11 was an inadvertent mistake and not a rejection or counteroffer.

[4] As the circuit court did not rule on the question of an accord and satisfaction in the Order Granting Defendant's Motion to Enforce Settlement, we decline to address this argument as an additional sustaining ground on which to affirm.