**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

William F. Tomz and Francis W. Tomz, Individually and as Class Representatives, Respondents,

v.

Capital Investment Funding, LLC, by and through its Receiver, Jerry T. Saad, and Arthur M. Field, Defendants,

Of Which Capital Investment Funding, LLC, by and through its Receiver, Jerry T. Saad is a Respondent and Arthur M. Field is the Appellant.

In Re: Kathryn Taillon, Appellant.

Appellate Case No. 2021-000341

--------

Appeal From Greenville County
Jean H. Toal, Acting Circuit Court Judge

--------

Unpublished Opinion No. 2025-UP-022
Heard October 8, 2024 – Filed January 29, 2025

--------

**AFFIRMED IN PART AND REVERSED IN PART**

--------

Micajah Pickett Caskey, IV, of Caskey Law Firm, P.A., of West Columbia, for Appellant Arthur M. Field.

Jeffrey P. Dunlaevy, of Dunlaevy Law Firm, of
Greenville, for Appellant Kathryn Taillon.

George Brandt, III, of Henderson Brandt & Vieth, PA, of
Spartanburg, for Respondents Capital Investment
Funding, LLC, and Jerry T. Saad.

Gene McCain Connell, Jr., of Kelaher Connell &
Connor, PC, of Surfside Beach, and Stanley T. Case, of
Spartanburg, both for Respondents William F. Tomz and
Frances W. Tomz.

---

**PER CURIAM:**  Arthur Field and Kathryn Taillon appeal an order of the circuit court granting Jerry T. Saad (Receiver) declaratory relief and finding the Receiver's action to collect on a civil judgment from Field in Florida was permitted under the Global Settlement Agreement (GSA).  On appeal, Field argues the circuit court erred by (1) not applying the South Carolina Uniform Declaratory Judgment Act (SCUDJA), (2) finding it had personal jurisdiction over him and subject matter jurisdiction over the case, and (3) awarding Capital Investment Funding, LLC (CIF) liquidated damages.  Taillon argues the circuit court erred by (4) finding it had jurisdiction in this matter when the judge who retained jurisdiction pursuant to the terms of the GSA later recused himself, (5) improperly applying the SCUDJA in deciding the Receiver's motion, (6) finding the GSA did not bar the Receiver from enforcing the civil judgment, and (7) awarding CIF liquidated damages.  We affirm in part and reverse in part.

This case arises out of a complicated history of litigation between these parties involving multiple lawsuits in state and federal courts, along with criminal charges, all of which relate to Field's conduct in operating CIF.  In 2008, CIF investors, led by William Tomz and Francis Tomz, initiated a class action, over which Judge Edward Miller presided.  Additionally, Field pled guilty to securities fraud, conspiracy, and forgery in a 2013 case prosecuted by the South Carolina Attorney General's (AG's) office.  Field was ordered to pay $2,877,711.73 in restitution in that case.

In December 2017, the parties reached an agreement to settle five pending civil cases via the GSA.  However, the GSA did not, and could not, resolve the criminal action.  The GSA contained broad language stating the parties agreed to settle all lawsuits and release any claims, known and unknown, except for "those related

solely to enforcement of the obligations" arising from the GSA. Per the GSA's terms, Judge Miller retained "sole and exclusive jurisdiction regarding any dispute related to the enforcement, performance or non-performance of any future obligation contained" in the GSA.[1] Additionally, the GSA included a liquidated damages provision stating that if any party "file[d] any suit or claim wherein he/she/they/it attempt[ed] to revoke or disqualify any term" of the GSA, the "prevailing party" would "be entitled [to] a minimum of $250,000.00 as liquidated damages for defending, responding or enforcing the terms" of the agreement.

However, Field wished to move to Florida, and the GSA was contingent upon the court modifying the terms of his probation.[2] At the hearing on Field's motion to modify his probation, the parties negotiated an addendum (Addendum), which deleted language from the GSA stating that Field would not owe any further restitution and that his restitution obligations would be satisfied in full.[3] Instead, the parties agreed that any payments made or properties transferred to CIF pursuant to the GSA would be credited towards Field's restitution obligation and any balance remaining at the end of his term of probation could be converted "to a civil judgment pursuant to the applicable laws of the State of South Carolina." Thereafter, Judge Miller approved the GSA and Addendum. Several months later, at a probation revocation hearing, Judge Maddox issued an order for a civil judgment in favor of Receiver in the amount of $1,767,634.71—the remaining balance of restitution after applying the credits outlined in the Addendum.

Sometime after the approval of the GSA, Field and Taillon moved to Florida.[4] The Receiver domesticated the civil judgment in Florida, and the county clerk issued a Writ of Execution. One week later, Field filed a notice of Homestead Exemption. Then, in May 2019, the Receiver commenced a declaratory judgment action in Florida state court seeking to determine whether Field's and Taillon's St. Augustine property was protected by Florida's homestead statute. Field and Taillon moved to dismiss, arguing the GSA barred the Receiver from attempting to enforce the civil

---

[1] The order approving the GSA contains slightly different language and says that the "[c]ourt retains sole and exclusive jurisdiction relating to all matters of enforcement or non-performance of the GSA."

[2] Judge Cordell Maddox presided in the criminal case.

[3] The AG's office objected to releasing Field from paying any further restitution, so the parties agreed to the Addendum as a compromise.

[4] Field and Taillon are married.

judgment.[5]  The Receiver then filed a "Motion for Declaratory Relief Related to CIF's Judgment Collection Action in Florida," under the case number for the 2008 South Carolina class action and requested the court "declare that [the Receiver's] judgment collection action against Arthur Field . . . is just and proper under the terms of the [GSA]."  The Florida court granted a stay, finding Judge Miller had retained jurisdiction and stating it would permit South Carolina "to assess whether any party's positions [in the Florida case] violate [the GSA]'s terms."

Field and Taillon moved to dismiss the South Carolina action, arguing the GSA barred the collection attempt in Florida and that the SCUDJA did not allow relief by motion.  Before the circuit court could rule on the motions, Field filed a motion to recuse Judge Miller; Judge Miller recused himself, and then-Chief Justice Beatty appointed Judge Toal "with exclusive jurisdiction to hear and dispose of" the case.  Judge Toal granted the Receiver's motion.  After both Field and Taillon filed motions to reconsider, Judge Toal issued an amended order finding, among other things, that (1) the GSA did not release Field's liability or obligations pursuant to his criminal restitution; (2) the Receiver's motion did not require a separate action under the SCUDJA; (3) the circuit court had personal jurisdiction over Field; and (4) the circuit court had subject matter jurisdiction.  Additionally, Judge Toal imposed liquidated damages against Field, finding his "multiple filings within the state of Florida and his repeated efforts to deny" South Carolina's jurisdiction, along with his "attempt to argue he [wa]s no longer obligated to pay restitution" amounted to "an attempt to disqualify the terms of the GSA."  This appeal followed.

## I.      Jurisdiction of the Circuit Court

Subject matter jurisdiction "refers to a court's constitutional or statutory power to adjudicate a case." *Johnson v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, 372 S.C. 279, 284, 641 S.E.2d 895, 897 (2007).  "A court lacking subject matter jurisdiction . . . has no authority to act . . . ." *Dove v. Gold Kist*, 314 S.C. 235, 238, 442 S.E.2d 598, 600 (1994).  "Whether a court has subject matter jurisdiction is a question of law we review de novo." *Deborah Dereede Living Tr. dated Dec. 18, 2013 v. Karp*, 427 S.C. 336, 346, 831 S.E.2d 435, 441 (Ct. App. 2019).

Personal jurisdiction "refers to the authority of a court over a particular person." *Boan v. Jacobs*, 296 S.C. 419, 421, 373 S.E.2d 697, 698 (Ct. App. 1988).  "The

_____

[5] The matter was removed to the federal district court at some point; however, the record on appeal does not contain any documents regarding the removal.

question of personal jurisdiction over a nonresident defendant is one which must be resolved upon the facts of each particular case." *Moosally v. W.W. Norton & Co.*, 358 S.C. 320, 327, 594 S.E.2d 878, 882 (Ct. App. 2004). "[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ." *Fin. Fed. Credit Inc. v. Brown*, 384 S.C. 555, 566, 683 S.E.2d 486, 492 (2009) (quoting *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964)).

Although we agree that the GSA contemplated dismissal of the 2008 action, it also imposed a requirement on counsel of record to "file appropriate notices in each of the pending actions" upon the completion of certain events; no such notices appear in the record before us. Additionally, neither the December 1, 2017 order, nor the December 21, 2017 order contain language dismissing Field or Taillon or closing the case. More importantly, Field and Taillon agreed to reserve exclusive jurisdiction in Judge Miller and the circuit court to resolve any questions "related to enforcement" of the GSA and Addendum, which is clearly the focus of the Receiver's motion.

Therefore, we hold that the circuit court had both personal and subject matter jurisdiction. *See Dove*, 314 S.C. at 237-38, 442 S.E. 2d at 600 (explaining subject matter jurisdiction is "the power to hear and determine cases of the general class to which the proceedings in question belong" (quoting *Bank of Babylon v. Quirk*, 472 A.2d 21, 22 (1984))); *Boan*, 296 S.C. at 421, 373 S.E.2d at 698 (stating personal jurisdiction "refers to the authority of a court over a particular person). Additionally, because the relief the Receiver sought amounted to the interpretation and enforcement of the GSA and Addendum, we hold the Receiver did not need to file a new summons and complaint. *See Kumar v. Third Generation, Inc.*, 324 S.C. 284, 290, 485 S.E.2d 626, 629 (Ct. App. 1995) (holding the circuit court had jurisdiction to hear a motion to vacate a settlement agreement even after a final order had been entered because a "[circuit] court has inherent jurisdiction to enforce settlement agreements entered before it"); *Rock Smith Chevrolet, Inc. v. Smith*, 309 S.C. 91, 93, 419 S.E.2d 841, 842 (Ct. App. 1992) ("There can be no doubt but that the [circuit] court retains inherent jurisdiction and power to enforce agreements entered into in settlement of litigation before that court."); *Campione v. Best*, 435 S.C. 451, 458, 868 S.E.2d 378, 382 (Ct. App. 2021) ("Courts are empowered to interpret their own orders . . . .").

## II. Interpretation of the GSA and Addendum

"In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009). "An action to construe a contract is an action at law." *Byrd v. Livingston*, 398 S.C. 237, 241, 727 S.E.2d 620, 622 (Ct. App. 2012). "In an action at law, on appeal of a case tried without a jury, the judge's findings will not be disturbed unless they are without evidentiary support." *Id.* "However, this court is free to decide questions of law with no particular deference to the [circuit] court." *Id.*

"General contract principles are applied in the construction of a settlement agreement . . . ." *Pee Dee Stores, Inc.*, 381 S.C. at 241, 672 S.E.2d at 803. "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary, and popular sense." *Sphere Drake Ins. Co. v. Litchfield*, 313 S.C. 471, 473, 438 S.E.2d 275, 277 (Ct. App. 1993). "Determining what the parties intended becomes a question of fact for [a] jury only when the contract is ambiguous." *Watson v. Underwood*, 407 S.C. 443, 455, 756 S.E.2d 155, 161 (Ct. App. 2014). "To discover the intention of a contract, the court must first look to its language—if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 498, 649 S.E.2d 494, 501 (Ct. App. 2007). "The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof." *Id.* at 498, 649 S.E.2d at 502.

We hold the circuit court correctly found the GSA and Addendum did not bar the Receiver's attempt to enforce the civil judgment in Florida. First, we note that neither the GSA nor the Addendum contain any language specifically stating that Field was to be released from his restitution obligation or that the Receiver would not collect on the civil judgment. *See* Rule 43(k), SCRCP ("No agreement between counsel affecting the proceedings in an action shall be binding unless reduced to the form of a consent order or written stipulation signed by counsel and entered in the record, or unless made in open court and noted upon the record, or reduced to writing and signed by the parties and their counsel."). Additionally, we agree with the circuit court that "the collection of a judgment is not a 'claim' as contemplated by the GSA." Although the GSA contains three releases, the releases refer to claims or actions that were or could have been raised *in the five listed actions* up to and including that time. Moreover, one of the releases specifically exempts matters "related . . . to enforcement of the obligations of the GSA." As discussed above, we find this litigation is related to enforcement of Field's and Taillon's obligations under the GSA and Addendum as an attempt to collect the civil judgment, which originated from the criminal action.

There is no provision in the GSA or Addendum stating that Field's restitution would be satisfied in full by fulfilling his obligations under the GSA. In fact, the Addendum was created specifically to remove language to that effect from the GSA. Pursuant to the Addendum, the value of any payments and properties transferred to CIF via the GSA would be applied "as credit towards and thereby *reducing* the $2,877,711.13 restitution that Arthur Field has been ordered to pay." We find the above provision, combined with the deletion of the language from the GSA stating that Field had satisfied his restitution in full, clearly evinces the parties' intent not to *eliminate* Field's restitution obligation.

Accordingly, we hold the GSA and Addendum are unambiguous and their force and effect can be determined from their language alone. *See S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302-03 (2001) ("It is a question of law for the court whether the language of a contract is ambiguous."); *Jordan v. Sec. Grp., Inc.*, 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993) ("A contract is ambiguous only when it may fairly and reasonably be understood in more ways than one."); *Barnacle Broad., Inc. v. Baker Broad., Inc.*, 343 S.C. 140, 146-47, 538 S.E.2d 672, 675 (Ct. App. 2000) ("In determining the intention of the parties, a court first looks to the language of the contract and if the language is clear and unambiguous, the language alone determines the contract's force and effect."). Therefore, we affirm the circuit court's finding that the GSA and Addendum do not bar the Receiver's action in Florida.[6]

### III. Liquidated Damages

"When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary, and popular sense." *Sphere Drake Ins. Co.*, 313 S.C. at 473, 438 S.E.2d at 277. "To discover the intention of a contract, the court must first look to its language—if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Ecclesiastes Prod. Ministries*, 374 S.C. at 498, 649 S.E.2d at 501. "It is a question of law for the court whether the language of a contract is ambiguous." *McClellanville*, 345 S.C. at 623, 550 S.E.2d at 302-03.

---

[6] This holding is limited only to the interpretation of the terms of the GSA and Addendum and should not be construed as a comment on the merits of the Florida action.

We hold the language of the liquidated damages provision in the GSA is clear and unambiguous. By its plain language, the liquidated damages are only available to a "*prevailing party*" in an action in which another party files a suit or claim and attempts to "revoke or disqualify any term" of the GSA. This court was asked only to interpret the terms of the GSA and Addendum, and the merits of the judgment collection in Florida have not been determined. Accordingly, there is no prevailing party at this stage of the proceedings. Thus, we reverse the circuit court's award of liquidated damages.[7] *See Byrd*, 398 S.C. at 241, 727 S.E.2d at 622 (explaining that "this court is free to decide questions of law with no particular deference to the [circuit] court").

**AFFIRMED IN PART AND REVERSED IN PART.**

**WILLIAMS, C.J., and MCDONALD and TURNER, JJ., concur.**

---

[7] Because our holding on the construction of the liquidated damages provision is dispositive, we do not reach the issue of whether the provision constitutes an unenforceable penalty. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (explaining an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).